LECHE, J.
The Rosedale plantation, situated in the parish of Assumption, belonging at the time to the Rosedale Planting & Manufacturing Company, was, on the 3d day of Eebruary, 1912, seized under a writ of seizure and sale issued in the matter of Emil Sundberry v. Chauííe Bros., and was advertised to be sold at public auction on March 23, 1912. The crop of sugar cane grown on said plantation during the year 1911, as well as other sugar cane purchased during that year by the owners of the plantation, had been harvested and ground and most of the proceeds sold at the time the seizure was made, but there was still left in the sugar factory a quantity of masse cuite, the value of which it was then very difficult if not impossible to estimate, but believed by some of the parties in interest to be worth approximately $25,000.
On March 23, 1912, the day upon which the sale was advertised to take place, the following claims were due and enforceable upon the property:
Emil Sundberry, mortgage note..'. $32,000 00
Emil Sundberry, mortgage note ... 18,000 00
Bank of Napoleonville, mortgage note.......................... 14,000 00
Emil Sundberry, mortgage note.... 7,500 00
Knobloch & Rainold, mortgage and crop lien...................... 49,148 09
Tom Alexander and others, laborers, crop lien...................... 7,451 22
A. K. Delaune, lien on masse cuite 12,171 39
T. J. & J. O. Delaune, lien on masse cuite ......................... 7,990 43
Bancroft, Ross & Sinclair Company, lien on machinery in sugar-house ........................ 13,265 00
The mortgages held by Sundberry and the Bank of Napoleonville amounted to $71,500. Next in rank was the mortgage of Knobloch & Rainold amounting to $49,148.09. The liens and privileges on the masse cuite, consisting of laborers’ wages $7,451.22, A. K. Delaune, cane seller, $12,171.39, T. J. & J. O. Delaune cane sellers, $7,990.43, and Knobloch & Rainold, furnishers of supplies, $49,148.09, aggregated $68,776.70.
The lien and privilege of Bancroft, Ross & Sinclair Company on the sugar mill and fixtures which were ordered appraised and sold separately amounted to $13,265.
Such was, sustantially, the situation on March 23d, when all the parties in interest, with a view of protecting their respective claims, met in Napoleonville, where the sale was to take place. Every one felt that the property might not realize enough to pay all the claims with which it was incumbered. The Bank of Napoleonville held a claim of $5,000 against T. J. & J. O. Delaune for advances, and the latter apparently agreed to let the bank assert its claim pro tanto on their share of whatever they might be able to realize out of their privilege on the masse cuite. Mr. Sundberry, plaintiff in executory process, was anxious to protect the claims of the bank, of which he was president. The *103 masse cuite, if sold separately from the plantation and adjudicated to any one not purchasing the plantation, would he worth little, because its removal to another factory to be worked into second and third sugars would entail expense out of proportion to its undetermined value.
Under these trying circumstances, with probable loss staring them in the face, the parties after much discussion, in order to save costs and expense and with a view of realizing to the best advantage out of the property to be sold, finally reached an agreement and signed a written instrument substantially to the following effect:
1. Emil Sundberry to bid in the Rosedale plantation.
2. Sundberry to sell the plantation to a new corporation to be organized as the Bertie Sugar Company, Limited; the said company to issue, as a consideration in said sale, vendor’s lien and mortgage notes in favor of said Sundberry and the Bank of Napoleon-ville in the same amount and ranking in order, as the notes then held by them.
3. Knobloch & Rainold to be given by the Bertie Sugar Company a mortgage for the entire amount of their claim against the Rosedale Planting & Manufacturing Company, Limited, less $5,000 to be paid on account, as hereinafter provided, said mortgage however to be inferior in rank to that to be given to Sundberry and to the Bank of Napoleonville.
The next clause of the agreement is worded as follows:
(4) “That the masse cuite and molasses on the Rosedale plantation shall be sold by public sale as soon as possible, and bought in by Knobloch & Rainold, at not over $25,000.00, the masse cuite, etc., to be worked up into second sugars and other products as soon as possible to do so to the best advantage, and sold on the open market, and out of the net proceeds thereof, are to be paid, first, the claims of all laborers, assigns or subrogees, against the Rosedale plantation, (2) five thousand dollars to Knobloch & Rainold, on their hereinbefore described debt; (3) the claims of Alcee Delaune and of the Bank of Napoleonville as set out in their respective suits against the Rosedale Company, to be paid pro rata as the money is realized, and any balance remaining after applying all of said proceeds as afore-, said, to be paid by a draft of said Bertie Sugar Company, Ltd., on Knobloch & Rainold.
“In case of the loss of the aforesaid masse cuite, sugar and molasses by fire, the insurance money shall stand in place of said masse cuite, and be divided as herein provided for the net proceeds of the sale of said products, without any obligation on the part of Knobloch & Rain-old to pay any balance due to Alcee Delaune, or the Bank of Napoleonville.”
Then follow the signatures of all the parties in interest.
The agreement shows upon its face that it was drawn up hurriedly, for there is no stipulation binding the Bertie Sugar Company, Limited^ the corporation to be organized, to purchase the plantation from Mr. Sundberry; nor is it reasonable that Knob-loch & Rainold should buy the masse cuite at not over $25,000, work it into sugar, sell the sugar, which would then have belonged to them, and distribute the proceeds of their own sugar among the laborers, Alcee Delaune, and the Bank of Napoleonville. But these discrepancies do not affect the matters at issue in this case. The agreement of sale was carried out by the Bertie Sugar Company, Limited, and the masse cuite, after being worked into sugar, was turned over and shipped to Knobloch & Rainold for sale on the New Orleans market, as evidently intended by all the parties.
The proceeds of the masse cuite were sold in open market and realized, gross, $18,724,41, and, after deducting cost of manufacture, $2,093.90, netted for distribution $16,630.51. Knobloch & Rainold then proceeded to distribute this amount, according to their understanding of the • written agreement, as follows:
*105 Tom Alexander and others, laborers’ claim $7,451.22 and $85.70 interest thereon............... $ 7,536 92
Knobloch & Rainold.............. 5,000 00
Alcee Delaune (proportionate share) 2,901 63
Bank of Napoleonville (proportionate share) ........................ 1,191 96
$16,630 51
The Bank of Napoleonville, after receiving its share of the proceeds of the masse cuite, $1,191.96, brings the present suit against Knobloch & Rainold to recover $3,804.04, the balance of its claim of $5,000 against T. J. & O. J. Delaune, which, it contends, Knobloch &' Rainold assumed unconditionally to pay to it, under the hereinabove transcribed clause of the agreement entered into on March 23,1912. Plaintiff’s demand was rejected by the district court, and the controversy is now before us on appeal.
Opinion.
[1,2] Our understanding and interpretation of the contract upon which plaintiff relies in order to recover in this suit does not impose upon defendants the liability for which plaintiff seeks to hold them. In fact, it seems to us that plaintiff’s contention is negatived by the very terms of the agreement, wherein it is stated, after providing for the distribution of the moneys realized from the sale of the proceeds of the masse cuite by defendants, “without any obligation on the part of Knobloch & Rainold to pay any balance due to Alcee Delaune or the Bank of Napoleonville.” Plaintiff relies in part on the expression in the contract, “and any balance” due to Delaune to the bank “remaining after applying all of said proceeds as aforesaid, to be paid by a draft of said Bertie Sugar Company, Limited, on Knobloch & Rainold.” A draft is not usually a payment unless it is honored, and it is not generally honored unless the drawee holds funds for account of the drawer. It is not pretended that Knobloch & Rainold had any funds in their keeping for account of the Bertie Sugar Company, Limited, and to hold them responsible for the amount of said drafts would be to impose upon them a liability, which would deprive them of the $5,-000 clearly and unequivocally coming to them, under the third and fourth clauses of the contract, out of the funds to be realized from the sale of the proceeds of the masse cuite. No doubt the parties believed that at some time in the future Knobloch & Rainold, as commission merchants and factors of the Bertie Sugar Company, Limited, would come into possession of funds belonging to the latter, out of which the draft mentioned in the agreement would be paid, and that is the only theory upon which all the terms of the agreement can be reasonably explained and harmonized. Unfortunately, subsequent events have shattered their anticipations. Defendants hold no funds for the Bertie Sugar Company, Limited, and therefore plaintiff’s demand must be refused.
[3-5] When persons commit their agreements to writing, their intentions and purposes cannot be sought outside the four corners of the written instrument. Where the terms of the agreement, however, are so ambiguous as not to be susceptible of intelligent construction, parol evidence may be admitted to make clear that which is obscure; but it is certainly in direct contravention of article 2276, Civ. Code, to admit parol, not to explain, but to add to and contradict, a written agreement. Testimony was adduced in this case for the purpose of explaining, but in point of fact it added to, the agreement and contradicted some of its terms. It sought to show that defendants had unconditionally bound themselves to pay plaintiff the whole amount of its claim, a direct contradiction to the stipulation in the agreement “without any obligation on the part of Knobloch & Rainold to pay any balance due to Alcee Delaune or the Bank of Napoleonville.” The witnesses who testified about that matter *107 were four in number, equally divided as to the affirmative and the negative, all gentlemen of high standing and irreproachable character, and their testimony only serves to accentuate the wisdom of the provisions of article 2276, Civ. Code. This testimony should not have been admitted, and defendants’ objection to its admissibility should have been maintained.
Believing that plaintiff’s demand is neither borne out by the terms of its agreement of March 23, 1912, with defendants, nor reconcilable with the clear and specific terms of that agreement, we hold that it was properly refused.
Judgment affirmed.
O’NIELL, J., concurs in the decree.
PROYOSTY, J., absent on account of illness, takes no part.