**141 So. 81**

## TRCKA v. BRAGMANS BLUFF LUMBER CO., Inc.

### No. 30713.

Feb. 1, 1932.

Rehearing Denied March 30, 1932.

Michel Provosty and George D. Leahy, both of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

BRUNOT, J.

This is a suit for several items of damages, resulting from the alleged breach of a contract. The defendant denied any liability and reconvened for an alleged balance due by the plaintiff on an open account. The trial judge rendered judgment in favor of the defendant and against the plaintiff, dismissing the plaintiff's suit with costs, and in favor of the defendant, in reconvention, and against the plaintiff for $3,388.73, with legal interest thereon from judicial demand. The court granted the plaintiff a devolutive appeal from the judgment, the appeal was perfected, and the transcript was filed in this court timely.

The case, with one exception, presents only questions of fact. In the petition, the plaintiff alleged a contemporaneous collateral verbal contract, to which defendant filed an exception of no cause of action. The court maintained this exception and excluded all evidence offered to prove the alleged contemporaneous verbal agreement. Whether or not these rulings were correct is the only legal question presented for consideration.

Plaintiff does not allege that there were two separate contracts, one written and one verbal; he merely alleges that the verbal agreement was part and parcel of the written contract. In the case of Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646, 649, the defendant sought to prove an alleged oral agreement. The lower court rejected the tendered proof, and in passing upon that ruling this court said:

"The evidence was properly rejected. The oral contract in question, was not, according to the averment of it in the answer, a separate, independent, collateral contract, but part and parcel of the contract sued on. In other words, the said averments are, in effect, that the written instrument does not embody the entire agreement of the parties, as that agreement stood at the time the instrument was executed; but embodies only part of the agreement; that, in addition to paying the price stipulated for the lumber, the plaintiff company was to make an advance of money to aid defendant in its business; and that that part of the agreement was left out of the written instrument. If, after having drawn up a writing for the purpose of serving as complete evidence of their contract, parties were allowed thus to modify the contract by oral evidence, it is not seen what would become of the statute, article 2276, Civ. Code:

" 'Neither shall parole evidence be admitted against or beyond what is contained in the acts, or at the time of making them, or since.' "

In this connection we cite Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214; Franks v. Davis Bros. Lumber Co., 146 La. 803, 84 So. 101; Jackson Brewing Co. v. Wagner, 117 La. 875, 42 So. 356; Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837; C. J. vol. 22, Evidence, § 1717; R. C. L. vol. 10, Evidence, § 211. Plaintiff cites no case holding to the contrary. The court correctly maintained the defendant's exception of no cause of action, and properly excluded the testimony offered for the purpose of proving the alleged oral agreement.

The contract the defendant is alleged to have breached is as follows:

"New Orleans, La., July 21st, 1925.
"The Bragmans Bluff Lumber Co. Inc.,
"New Orleans, La.
"Gentlemen:

"I herewith make you the following proposition to make 100,000 standard 6"x8"x8' hewn pine cross ties (four sides) with a small proportion of 7 ft. lengths, satisfactory to your Railroad Engineering Department, under the following conditions: You to transport my men at a cost of not over $56.00 per man, round trip for my account.

"You to furnish mules, wagons and as many movable camps that are necessary (not over 10) without cost to me. I agree to maintain wagons and camps. You to furnish commissary supplies at your selling price less 10% for my account.

"Mule feed to be furnished for my account at landed cost plus 10%.

"I agree to furnish ties loaded on your railroad cars at cost not to exceed .50c U. S. Currency per tie.

"In naming you the price of .50c, I estimate .39c to be my cost of making, hauling and loading ties; maintaining wagons, etc., feeding mules; drivers wages; transportation two ways of men. The other .11c for overhead expenses and my profit. If any savings be made in the .39c item, such savings to be divided equally between myself and your company.

"I agree to have my men ready (not less than 15) and leave with them on any steamer you designate, departing from New Orleans between August 8th and September 1st, 1925. I would require from seven to ten days no-

tice to have men ready. It is understood that you will furnish timber for the making of ties, such timber to be located at not over a 4 mile haul.

"Credits to my account to be made when ties are loaded on cars.

"[Signed] F. J. Trcka.
"Witness: W. E. Barnes [Signed].

"We hereby accept your proposition as above.

"Bragmans Bluff Lumber Co. Inc.
"[Signed] Chas. Leftwich, Secretary."

 The defendant alleges that it complied with the contract, but it admits that it canceled the contract, therefore, the first question to be considered is whether or not the defendant was justified in canceling the contract. The alleged causes for the canceling of the contract are that plaintiff did not properly perform the work called for by the contract because of his frequent intoxication; that plaintiff most of his time was in his tie camp rather than in the woods supervising the work of his tie-makers; that he refused to obey defendant's instructions as to the places where timber was to be cut; that plaintiff cut the timber in a wasteful manner, leaving butts in the woods that should have been made into ties; that he cut timber, of the defendant, into lumber and sold the lumber for his own account; and that he was cautioned about the manner in which he was handling the work and was warned that if conditions with respect thereto did not improve, defendant would be compelled to cancel the contract. There is approximately 800 pages of oral testimony, many pages of testimony taken under commission, and an exceptionally large number of exhibits in the record. To review this mass of evidence, in detail, would require several days. We have read the entire transcript and have reached the deliberate conclusion that the learned trial judge thoroughly appreciates the proven facts. We therefore adopt his findings of fact. He says:

"The evidence shows that at the time that the plaintiff was making these ties at 50 cents apiece, delivered to the railroad cars, the defendant, through its necessities, was importing ties from the states, which creosoted cost them approximately $1.30 apiece and that the uncreosoted price would have been 96½ cents each.

"This demonstrates that it would have been highly to the interest of the defendant to have the plaintiff fulfill his contract for 100,-000 ties at 50 cents each and it must be realized that there must have been strong compelling reasons to have it canceled as it did. Besides, the evidence shows that the plaintiff had not one dollar with which to carry on his operations, and in order to put to an end the whole transaction, all that would have been necessary would have been for the defendant to have refused to advance further money, which they were not obliged in any manner, shape or form to advance, except of their own free will, and had they stopped advancing cash the plaintiff would be forced to cease operations and abandon his undertaking.

"The testimony in this case is most voluminous, there being required approximately thirty days in the taking of testimony.

"I feel that it is unnecessary for me to go through a long analysis of the evidence, but that it is sufficient to say that the hear-

ing and reading of the testimony convinces me that the defendant did everything that it was called upon to do, under the contract.

"It transported the men desired by the plaintiff. It furnished him with mules, wagons and movable camps to the full discharge of its obligations. The mules were reasonably good and the wagons were reasonably good and it furnished him the commissary supplies and mule feed to the full discharge of its obligation.

"I have, therefore, no hesitation in dismissing all of the claims made by the plaintiff based on poor mules, poor wagons and failure to furnish movable camps.

"As for all of the claims concerning the mill, there was no obligation whatsoever on the part of the defendant to furnish any mill, nor to accept sawn ties in the place of hewn ties, it being well known that hewn ties are superior to sawn ties.

"I also find as a fact that the defendant substantially carried the burden of proving it was justified in canceling its contract and I find as a fact that the plaintiff, instead of making money on his contract at 50 cents per tie was constantly losing money and there is nothing in the record to indicate or prove that had the contract been carried out to completion of the 100,000 ties, that the losses would not have continued in the same proportion and, therefore, under the authority of Des Allemands Lumber Company v. Morgan City Timber Company, 117 La. 1, 41 So. 332, there can be no recovery on this item.

"The only items claimed by the plaintiff, which I find justified are as follows:

Claim No. 6........................ $261.71
Claim No. 12....................... 181.17
Claim No. 17-A.................... 252.70
Claim No. 19....................... 147.15

Or a total of....................... $842.73.

"I find that the account sued on in reconvention, amounting to $4,231.46, is substantially correct and deducting therefrom the allowance made of $842.73, leaves a balance in favor of the defendant and plaintiff in reconvention of $3,388.73, for which it should have judgment."

For the reasons stated, the judgment appealed from is affirmed, at appellant's cost.