On Rehearing
 

 HAMITER, Justice.
 

 To restate the material facts of this case chronologically and as briefly as possible, for the purpose of giving expression to our views on the rehearing, John L. Garrett, on March 23, 1937, executed in favor of the Gulf Refining Company an oil, gas and mineral lease having a primary term of five years and affecting the West Half of Southwest Quarter (W% of SW%) of Section 24, Township 23 North, Range 8 West, Claiborne Parish, Louisiana. This property, being part of a farm known as the Sherman Place, belonged to the community of acquets and gains existing between him and his second wife, Mrs. Mary McKinnon Garrett, it having been acquired during their marriage.
 

 On May 14, 1941, John L. Garrett died. Surviving were children and grandchildren of his first marriage and also his widow
 
 *699
 
 and some children of the second marriage. The last will and testament left by him provided that his one-half interest in the above land, as well as in other property, be held by his widow, Mrs. Mary McKinnon Garrett, for her use and benefit as long as she shall live, and after her death to be divided between his heirs. Instead of offering the will for probate, the widow and the descendants of both marriages joined in a petition to the court, as if in an intestate succession, in which they averred an acceptance of decedent’s estate unconditionally and prayed to be recognized, respectively, as the surviving spouse in community and the sole heirs at law of John L. Garrett. By an ex parte j'udgment dated July 5, 1941, the petitioners were so recognized, and in the named capacities they were placed in possession of the property. On the same day there was recorded in the Conveyance Records of Claiborne Parish a contract signed by the widow and heirs, describing the Sherman Place and bearing date of June 17, 1941, in which the following was recited:
 

 “The above appearers do hereby agree, without any revocation,
 
 to the use of the property described herein below for the use of Mrs. Mary McKinnon Garrett, during her entire lifetime, and from which she shall have the revenues,
 
 and at the death of the said Mrs. Mary McKinnon Garrett said property will be divided under the laws of the State of Louisiana, it being understood that at this date the said Mrs. Mary McKinnon Garrett owns one-half of the said property and that the other half was inherited.by these appearers on the death of the said John L. Garrett, but that said property is community property of the said John L. Garrett and Mrs. Mary McKinnon Garrett and by that fact an undivided one-half belongs to her and one-half belonged to said John L. Garrett and now to your appearers, and that at the death of the said Mrs. Mary McKinnon Garrett her heirs will inherit her undivided one-half of said property, * * *.
 

 * * h= * *
 

 “It is further understood and agreed that the said Mrs. Mary McKinnon Garrett shall have full charge of said above described real estate,
 
 but shall not attempt to encumber said property or sell same to disadvantage of your appearers."
 
 (Italics ours.)
 

 On March 20, 1942, the Gulf Refining Company consummated with the widow and heirs of John L. Garrett an agrees ment, styled a Pooling and Unitization Contract, respecting the oil, gas and mineral lease obtained by the former from John L. Garrett on March 23, 1937. . Un,der the agreement, confected three days prior to the expiration of the original lease, the Gulf Refining Company obligated itself to commence operations within 30 days for the drilling of a well on the 80 acres, to a depth below 3,000 feet from the surface, and to make a bona fide test of what is known as the Pettit Zone formation.
 

 Drilling operations contemplated by the agreement of March 20, 1942, were begun on April 4, 1942, and a producing well was completed on May 10, 1942.. From
 
 *701
 
 the date of commencement of production until September 30, 1942, the Gulf Refining Company purchased the royalty oil (% royalty due under the terms of the lease), and sought to make payment of the proceeds to the lessors.
 

 As to a .032733 royalty interest, however, a dispute developed between Mrs. Mary McKinnon Garrett on the one hand and the children and grandchildren of Mr. Garrett’s first marriage on the other, the basis of which was the above-quoted contract entered into by the- parties under date' of June 17, 1941. Mrs. Garrett’s position was that by such contract she should receive in full and perpetual ownership all of the revenues from the Sherman Place during her lifetime, including the proceeds from any oil wells drilled on the land, in consideration for which she obligated herself not to alienate or dispose of any part of the property (she owned a community one-half interest therein) ; her opponents insisted that the instrument gave her only the usufruct of the interest in the land which they inherited and that the proceeds from the well in question were not affected by that usufruct.
 

 In view of that disagreement the Gulf Refining Company, in this cause, deposited the proceeds of the disputed royalty interest in the registry of the court for the purpose of having payment made to the person or persons judicially determined to be entitled thereto.
 

 The district court, after a trial in which there was excluded all evidence tending to show the intention of the parties in the execution of the mentioned contract, rejected Mrs. Garrett’s demands and decreed the deposited funds to be the property of the children and grandchildren of Mr. Garrett’s first marriage. In reaching this result, the judge reasoned in part: “We are satisfied that the instrument clearly conveys a usufruct. * * * We think the purpose clearly was to give her the same usufruct of the portion inherited by the children of the first marriage that she had by law over that falling to her own children.”
 

 The Court of Appeals, by a unanimous decision, reversed that judgment and awarded the funds to Mrs. Garrett. 'The Court commented that “the words of the contract * * * are clear and explicit”, that “the rights granted went beyond the use of the property”, and that “royalties accruing from the production of oil, under the plain provisions of the agreement at issue, belong to Mrs. Mary McKinnon Garrett during her lifetime.”
 

 On the original hearing in this court and with three members dissenting, the cause having reached here on a writ of certiorari or review, the judgment of the Court of Appeal was annulled and that of the district court reinstated and affirmed. By the granting of a rehearing, however, both the decree and the entire supporting opinion of this court gn such original hearing were set aside and vacated.
 

 In reaching the conclusion announced in the majority opinion on the original hearing that the widow and heirs of John L. Garrett seem to have construed their
 
 *703
 
 agreement of June 17, 1941, as conferring upon the widow no greater right than that of usufructuary of the interest owned by the heirs of the first marriage in the Sherman Place, consideration was not restricted to the express words of that instrument; rather there were also considered the provisions of the will of decedent John L. Garrett (which was never probated), certain allegations contained in the answer filed in this cause by Mrs. Garrett, and the record in the succession proceeding through which the widow and heirs of Mr. Garrett were placed in possession of the estate. The use of such extrinsic evidence in the interpretation of the disputed contract was justified in the mentioned majority opinion by the observations that Mrs. Garrett in her answer herein referred to the intestate proceeding as being a more economical method for settling the estate of her husband, that she attached to and made a part of such answer the last will and testament of decedent, and that she averred that the agreement of June 17, 1941, was entered into in order to carry out the terms of the will.
 

 On further examination of Mrs. Garrett’s pleadings herein, along with the referred to documents, we are not now certain that by them she seems to have construed the contract as conferring upon her only a usufruct of the interest owned by the heirs of the firsdfenarriage. Notwithstanding that the will of -her late husband was annexed to and made a part of her answer and that she used the above-recited averments, she specifically alleged that the will of Mr. Garrett “provided that your respondent should inherit from him the Sherman Place * *
 
 *
 
 and that she would have the full use, benefit,
 
 revenues and income therefrom
 
 * * * Further, with reference to the execution of the contract in dispute, she averred that it was intended that “she would have the use and benefit, with the right to receive
 
 all the revenues,
 
 from the Sherman Place * * * It is quite possible, in other words, that at all times since the execution of the contract she has construed the instrument as granting to her in perpetuity the entire income from the property, including the proceeds of the oil royalties involved in this cause.
 

 It is elementary that in the interpretation of a contract the court must give legal effect to the instrument according to the true intent of all the parties, and such intent is to be determined by the words used therein, without the aid of extrinsic evidence, when these are clear and explicit and lead to no absurd consequence. Revised Civil Code, Article 1945; Hello World Broadcasting Corporation v. International Broadcasting Corporation, 186 La. 589, 173 So. 115; Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363. Where, however, the instrument is so ambiguous that it creates doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in its construction. Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214; Holloway Gravel Company, Inc., v. McKowen, 200 La. 917, 9 So.2d 228; Rudman v. Dupuis, supra.
 

 As before shown, the district judge on the trial of this cause excluded all ex
 
 *705
 
 trinsic evidence that was offered for the purpose of showing the intent of the parties in the execution of the contract, in which the heirs agreed “to the use of the property • described herein below (Sherman Place) for the use of Mrs. Mary McKinnon Garrett, during her entire lifetime, and from which she shall have the revenues * * * ”, such judge taking the position that the instrument was free of ambiguity; and thereafter, in support of his judgment rejecting Mrs. Garrett’s demands, he held that “the instrument clearly conveys a usufruct.” The Court of Appeal likewise thought that the words of the contract are clear and explicit; but it concluded that from the language thus employed the rights granted to Mrs. Garrett went beyond the mere use of the land and specifically comprehended the enjoyment of all revenues in complete ownership, including the royalties accruing from the production of oil, arising from the property during her lifetime. In the majority opinion of this court on the original hearing, no comment was offered on the question of whether or not the words of the contract are clear and explicit. But the reasons assigned for the judgment rendered disclose that in the interpretation of the instrument resort was had to extrinsic evidence (the will and the record in the succession proceeding), a procedure that is sanctioned in law only when a contract is uncertain or ambiguous.
 

 On giving further consideration to the' instant contract we have decided that it is attended with ambiguity sufficient to leave the mind in doubt as to the true in-tention of the parties and, further, that a resort to extrinsic evidence as an aid in its construction would be permissible and appropriate. Influencing, but not entirely responsible for, the decision are the diverse interpretations placed on the contract by the several judges who have heretofore passed on it. The extrinsic evidence should not be restricted, however, to that furnished by Mrs. Garrett’s pleadings in this cause, which alone was before this court on the original hearing; rather all admissible evidence, both documentary and parol, that tends to show what was intended by the agreement, should be received and considered. Consequently, for the purpose of affording the respective litigants the opportunity of offering proof of that kind the case will be remanded to the district court.
 

 Authority for our remanding this case to receive additional evidence is also furnished by Code of Practice, Article 906, in which it is said: “But if the court shall think it not possible to pronounce definitively on the cause, in the state in which it is, either because the parties have failed to adduce the necessary testimony, or because the inferior court refuse to receive it, or otherwise, it may, according to circumstances, remand the cause to the lower court, with instructions .as to the testimony which it shall receive, to the end that it may decide according to law.”
 

 The procedure outlined in this article is authorized so that the interests of justice may be better served.
 

 For the reasons assigned (the original decree and opinion of this court having
 
 *707
 
 been previously vacated by the granting of the rehearing) it is now ordered that the judgment of the Court of Appeal, as well 4S of the district court, be reversed and set aside and that the case be remanded to the district court for the purpose of hearing and receiving additional evidence respecting the intention of the parties in the execution of the contract of date June 17, 1941. At the conclusion of the hearing the district court shall render judgment, according to law, on the evidence heretofore and to be adduced. All costs shall await the final determination of the litigation. The right to apply for a rehearing is reserved to all the litigants.