CHASEZ, Judge.
This lawsuit involves two claims, entirely distinct except in relation to defendant, Maison Jolie, Inc. One claim is for the balance of the price of a lot Maison Jolie, Inc., caused to be transferred to plaintiff, Bertram C. Carbo and the second claim relates to building contract liens filed against the lot and building constructed thereon by Maison Jolie, Inc., for Carbo. The suits which were consolidated with this one all involve building contract liens.
Judgment was rendered in favor of Bertram C. Carbo and against Maison Jolie, Inc., for the balance due on the price of the lot; and Maison Jolie, Inc., appeals seeking reversal of that judgment, and Bertram C. Carbo appeals seeking to have United Bonding Insurance Company adjudged liable in solido with Maison Jolie, Inc. United Bonding Insurance Company is the surety on the building contract performance bond.
Judgment was also rendered in favor of the lien claimants against Bertram C. Carbo, Maison Jolie, Inc., and United Bonding Insurance Company in solido, and the judgment also provided for adjustment of the liability of the solidary judgment debtors inter se. Both Bertram C. Carbo and United Bonding Insurance Company appeal from that part of the judgment, each arguing that he is not liable but not disputing the correctness of the amounts of the lien claims.
Plaintiff’s petition alleged, and the evidence admitted over objections based on parol evidence rules clearly proves, the facts set forth hereafter. The question is whether the evidence was properly admitted.
Plaintiff entered into negotiations with one John R. Cafiero for the construction of a home on plaintiff’s lot in a subdivision known as Redgate. When it appeared the cost of constructing on his own lot would be more than plaintiff desired to spend, he and Cafiero began negotiations for the construction of a house on a less valuable lot on Wildwood Street which Cafiero had bound himself to buy from one John A. DeGrey. The buy-sell agreement stipulated the $6,750.00 price was to be paid half cash and half credit, secured by a second mortgage, payable upon completion of a house to be constructed; and the mortgage was to be inferior to a collateral mortgage to be executed by purchaser to obtain interim construction financing.
At or about this time the persons with whom Cafiero was operating incorporated Maison Jolie, Inc., for the purpose of building the house for plaintiff and other houses, and Cafiero became Maison Jolie, Incorporated’s general manager and continued his dealings with plaintiff in that capacity.
As general manager of Maison Jolie, Inc., Cafiero agreed with plaintiff verbally that Maison Jolie, Inc., would assume the Ca-fiero-DeGrey buy-sell agreement and have *240 title to the Wildwood property placed in plaintiff’s name, would construct the desired house on the lot, all for a price of $29,000.00, which was $2,000.00 less than the price Maison Jolie, Inc., asked for the house and lot; and would accept plaintiff’s Redgate lot assuming the existent $3,500.00 mortgage upon it and give plaintiff credit for the net worth of the lot based on a price of $7,500.00, which was $2,000.00 less than plaintiff’s valuation of his Redgate lot. And plaintiff agreed that he would convey his Redgate lot to Maison Jolie, Inc., at the reduced price, and would additionally pay for the house and Wildwood lot, the reduced price of $29,000.00, composed of $4,-000.00 represented by the reduced net worth of his Redgate lot and $25,000.00; and that he as new owner would execute the second mortgage on the Wildwood lot required by the Cafiero-DeGrey buy-sell agreement assumed by Maison Jolie, Inc., and the collateral mortgage also stipulated in that buy-sell agreement to secure interim construction financing.
In furtherance of that agreement plaintiff did transfer his Redgate lot to Maison Jolie, Inc., (who in turn sold it for $9,800.-00), and the following documents were executed, all on May 19, 1960, and all before the same notary:
(1) Sale of the Wildwood lot by De-Grey to plaintiff, reciting payment of $6,750.00 in cash. In fact Mai-son Jolie, Inc., paid the cash half of the price, in complete compliance with the original buy-sell agreement, by its check signed by Cafiero and William L. Tungate, its vice-president, and annotated in a space provided for explanation of the check “l/j Pay lot 14 Wildwood Subd”. The balance of the price was in fact represented by a mortgage note made by plaintiff as mortgagor and endorsed by Cafiero.
(2) Mortgage on the Wildwood lot executed by plaintiff as á new owner to secure the mortgage note given for the credit half of the price of the Wildwood lot.
(3) Collateral mortgage on the Wild-wood lot executed by plaintiff for some $20,000.00.
(4) Building contract between plaintiff and Maison Jolie, Inc., for the construction of the desired house, prepared on a printed form and providing “work to be performed for the price of $29,000.00” and also reciting the first payment of $4,000.00 “has been previously paid by owner and received by contractor prior to the signing of this contract.”
Plaintiff, Maison Jolie, Incorporated’s then general manager, Cafiero, DeGrey and the Notary Public all testified that it was expressly confirmed verbally by Cafiero immediately prior to and at the time of executing the above documents that Maison Jolie, Inc., would itself pay the balance of the price on the Wildwood lot upon the completion of the house.
The following day United Bonding Insurance Company executed a “performance bond” in the amount of $29,000.00 by which the Bonding Company, in effect, guaranteed the building contract performance by Maison Jolie, Incorporated. In no case can the Bonding Company be held as S’trety on Maison Jolie, Incorporated’s promise to pay for the Wildwood lot; sure-tyship must be “restrained within the limits intended by the contract”, LSA-C.C. Art. 3039, and being the promise to pay the debt of a third party must be in writing, LSA-C.C. Art. 2278(3). United Bonding Insurance Company therefore has no responsibility in any case for the lot price, whether or not parol is admissible to- show Maison Jolie Incorporated’s promise, and the judgment appealed from was correct in rejecting this claim as against United Bonding Insurance Company.
*241 Maison Jolie Incorporated’s objections to parol are based on two grounds.
We eliminate preliminarily the objection that Maison Jolie Incorporated’s promise to pay for the lot was a promise to pay the debt of a third party, to prove which parol is inadmissible under LSA-C.C. Art. 2278(3). The whole thrust of plaintiff’s case is that he was never obliged, as between himself and Maison Jolie, Incorporated, to pay for the lot. Since Maison Jolie Incorporated had him take title to the lot, because a newborn corporation like Maison Jolie Incorporated could not handle the interim financing, it was necessary that plaintiff as owner grant the second mortgage to secure the debt of Maison Jolie Incorporated. But it is plaintiff who promised, to DeGrey only, to pay the direct and primary obligation of Maison Jolie Incorporated and not vice versa. We note also that Art. 2278(3) merely prohibits the reception of verbal proof, and that the written buy-sell agreement and the written Maison Jolie Incorporated check for “i/£ pay”' fairly show Maison Jolie Incorporated’s promise by written proof. Therefore Art. 2278(3) did not prevent the reception of the evidence introduced.
 The second parol evidence objection is based on LSA-C.C. Art. 2276, rejecting proof against or beyond a written contract. The written building contract provides “work to be performed for the price of $29,000.00”, and Maison Jolie Incorporated complains that plaintiff’s evidence makes it both perform the work and pay for the lot for $29,000.00. Of course the evidence was offered to show that both plaintiff and Maison Jolie Incorporated gave other consideration, and that the entire agreement of the parties was for Mai-son Jolie, Incorporated to do the work and pay for the lot in return for $29,000.00 plus plaintiff’s Redgate lot at a reduced price. The contractual parol evidence rule of Art. 2276 excludes evidence of other prior and contemporaneous agreements only when such other agreements tend to alter, vary, or contradict the written contract; but parol is admissible to prove a collateral agreement. Davies v. William W. Bierce, 114 La. 663, 38 So. 488 (1905). The collateral agreement must be one that would not have “normally and naturally” been included in the writing; United Engineering Co. of Louisiana v. Durbin, 68 So.2d 614 (La.App.1953). The promise in question by Maison Jolie Incorporated was naturally not included in the printed building contract, because there was no appropriate blank in the printed form to show that promise or any other part of the complicated overall agreement of the parties.
Furthermore, the Louisiana cases declaring parol admissible to show true consideration, even though a different consideration be stated in the written agreement, are many; see, e. g., Stephens v. Anderson-Dunham, Inc., 234 La. 237, 99 So.2d 95 (1958).
We also note the similarity between the situation present here and that of Johnson v. Capital City Ford Company, 85 So.2d 75 (La.App.1956; cert. den.), in that here, too, it might be said that one of the principal causes for plaintiff’s assent to and execution of the $29,000.00 building contract was the promise by Maison Jolie Incorporated, already executed in principal part, to have the title to the Wildwood lot placed in plaintiff’s name at Maison Jolie Incorporated’s cost.
Accordingly the parol was likewise not excluded by LSA-C.C. Art. 2276. It was properly admitted and it conclusively established plaintiff’s claim against Maison Jolie Incorporated for the balance of the price of the Wildwood lot; and the judgment recognizing that claim is correct.
However, the judgment also awarded plaintiff $1,500.00 as damages, and since the only damages arising out of the breach of an obligation to pay money are interest, LSA-C.C. Art. 1935, that part of the judgment awarding $1,500.00 damages must be reversed.

*242
The Building Contract Liens

The judgment in favor of intervenor, Louisiana Industries Inc., a supplier of materials to Maison Jolie Incorporated, is not disputed as to amount. It and the other judgments in favor of lienors in the consolidated suits do not amount to $5,000.00, the amount retained by plaintiff as the final contract payment.
Plaintiff is personally liable to the lien claimants, at least to the extent of the $5,000.00 he retains, because his own claims do not consist of costs of completion and are therefore subordinate to the lien claims; LSA-R.S. 9:4804.
United Bonding Insurance Company is liable to intervenor and the other lienors because the condition of its bond is the payment of “all persons who have contracts directly” with Maison Jolie; and inter-venor and the other lienors did have direct contracts with Maison Jolie. The surety can make no defense against lien claimants the contractor could not make; LSA-R.S. 9:4806.
The judgment was therefore correct in holding both plaintiff and United Bonding Insurance Company solidarily liable to in-tervenor, Louisiana Industries Inc.
The judgment also provided reimbursement in favor of the surety against the contractor and plaintiff in solido, and in favor of plaintiff against the contractor. This aspect of the judgment is of course correct, since plaintiff’s claim against the contractor for the lot price cannot be charged against the $5,000.00 payment plaintiff retains until after the lien claimants have been paid; LSA-R.S. 9:4804.
Attorney’s fees in the amount of $600.00 were awarded plaintiff against Mai-son Jolie Incorporated for its failure to procure the cancellation of the liens, which failure resulted in the intervention in this suit and four other lawsuits being filed against plaintiff. The written building contract provided for attorney’s fees and that aspect of the judgment is also correct.
The claim of Maison Jolie Incorporated for the $5,000.00 retainage is of course basically valid, but the $5,000.00 will be exhausted first, by the payment of the liens (whether by plaintiff directly or by him through the surety), and second, by plaintiff’s judgment against Maison Jolie Incorporated for attorney’s fees and the balance of the price of the Wildwood lot. Maison Jolie Incorporated’s claim for return of the first half of the price of the Wildwood lot, alleged to have been paid in error, is of course not supported by the evidence and was properly rejected.
For the foregoing reasons the judgment appealed from is affirmed insofar as it awarded judgment in favor of plaintiff and against Maison Jolie Incorporated for the unpaid balance of the price of the Wild-wood lot with interest and $600.00 attorney’s fees; it is reversed insofar as it awarded $1500.00 damages to plaintiff; it is modified to reduce the setoff of $5,000.00 in favor of Maison Jolie Incorporated against plaintiff’s judgment, by limiting the amount of the setoff to the balance remaining out of that $5,000.00 after deduction of all payments by plaintiff to satisfy the judgments in favor of intervenor, Louisiana Industries, Inc., and the other lien claimants in the suits consolidated here with, or to reimburse United Bonding Insurance Company for any payments by it in satisfaction of those judgments; it is affirmed insofar as it awarded judgment in favor of the intervenor, Louisiana Industries, Inc., and against Maison Jolie Incorporated, United Bonding Insurance Company and plaintiff in solido, and insofar as it awarded reimbursement in favor of United Bonding Insurance Company against Maison Jolie Incorporated, and plaintiff in solido for any amounts paid by United Bonding Insurance Company in satisfaction of the judgment in favor of Louisiana Industries, Inc., but it is modified to limit the reimbursement against plaintiff to the amount of $5,000.00 reduced by any payments plain *243 tiffs may make to satisfy the judgments in favor of intervenor, Louisiana Industries, Inc., and the lien claimants in the consolidated suits. Plaintiff’s costs are to be divided between Maison Jolie Incorporated and United Bonding Insurance Company. Intervenoffs costs are to be paid by United Bonding Insurance Company; and United Bonding Insurance Company is entitled to reimbursement from Maison Jolie Incorporated for all costs.
Affirmed and modified in part; reversed in part.