SAMUEL, Judge.
Donald E. Dahl, a real estate broker, instituted this suit against the defendant bank for the sum of $7,232.69, representing $6,280 allegedly due him as a real estate commission under a written agreement to purchase real estate and $952.69 as a result of overpayment of an indebtedness. The bank answered denying liability and avert *580 ing- that, insofar as the lesser amount was concerned, there had been no overpayment and that the larger amount had been delivered by the bank to plaintiff’s agent, James J. Morrison. The bank also filed a third-party demand against Morrison for indemnification in the event it was cast for all or any part of the $6,280 claimed as a real estate commission. Morrison’s answer to the third-party petition denies liability on his part.
The trial court rendered j udgment on the main demand in favor of defendant, dismissing plaintiff’s suit, and in favor of the third-party defendant, dismissing the bank’s third-party action. As shown in his reasons for judgment, the trial judge found Dahl had constituted Morrison his agent in a pledge transaction in connection with the agreement to purchase, had not revoked that agency, and thus had given Morrison authority to receive the funds at the termination of the pledge.
Dahl has appealed from that part of the judgment which dismisses his suit and the bank has appealed from that part which dismisses its third-party demand in order to protect its rights against Morrison in the event the judgment on the main demand should be reversed on appeal.
From our examination of the record, we find the following facts: At one time Dahl owned a tract of land in Merlie Manor Subdivision in the City of New Orleans upon which his real estate corporation had constructed eight homes. He had mortgaged the property to the bank to secure a $147,-400 loan and was additionally indebted to the bank on two notes in the total amount of $5,000. A part of the note indebtedness was later paid as a result of the sale of stock pledged as collateral security therefor. Chiefly because,of a decline in the market, Dahl was unable to make payments on his real estate loan as they became due and the bank seized and purchased the property at a sheriff’s sale on June 29, 1961. Dahl had various conferences with the bank in an effort to realize some money from the property and subsequently the bank agreed to sell the same, and to pay him a real estate commission, if he could find a purchaser for the entire tract whose credit standing would be acceptable to the bank, provided the purchase price would be sufficiently large as to “make the bank whole”, i. e., sufficient to reimburse the bank for all expenses and loss it had incurred in connection with Dahl’s real estate loan and his two notes. Dahl secured a purchaser in the person of James J. Morrison, who had been his attorney in some matters arising out of the former’s $147,400 loan from the bank.
On July 10, 1961, after the vice-president of the bank who handled the transaction had discussed the matter with Dahl and Morrison on several occasions, with various proposals being made and accepted or rejected in those discussions, Morrison offered to buy the property for $172,000 in a written agreement to purchase signed by him and, as selling agent, by Dahl. The bank accepted this offer and signed the same through its vice-president. Pertinent portions of the agreement state that $5,000 of the purchase price was to be paid in cash and “Balance represented by note secured by mortgage due one year from date at 514% interest and vendor’s lien, agent’s commission of $8,880 to be paid by vendor and remain as collateral security for loan, except $2,600 to be used to liquidate Dahl note.” Three printed sentences relating to the payment of the agent’s commission were stricken out of the agreement which was on a standard printed real estate form.
On October 21, 1961, the act of sale transferring ownership from the bank to Morrison was consummated. At that time cashier’s checks for $2,600 and $6,280 were issued by the bank to the order of Morrison. Dahl was not present at the passage of the act of sale, nor does his signature appear on any instrument other than the agreement to purchase. Morrison endorsed the $2,600 check and returned it to the bank which applied it to the liquidation of the Dahl note in accordance with the agreement. Morrison also endorsed and pledged the $6,280 *581 check as collateral security for his $167,-000 loan. Later the bank agreed to permit substitution of a certificate of deposit for the check so the same might earn interest. When the mortgage note for $167,000 was finally paid on December 23, 1964, the bank paid Morrison the $6,280 which had been pledged as collateral security. Although the question of whether Dahl constituted Morrison his agent in the pledge transaction is disputed, and denied by Dahl in his testimony, it is clear that, if such an agency did exist, it was never revoked by Dahl prior to the time the $6,280 was paid by the bank to Morrison more than three years after the signing of the agreement.
The record contains the testimony of only three witnesses, Dahl, Morrison and the vice-president of the bank who handled the transaction. The latter testified: During his discussion with Dahl and Morrison he was informed by them that they had agreed to operate the property as a joint venture with Morrison handling all of the money involved; the bank required that the $6,280 portion of Dahl’s commission be pledged as collateral to secure the loan to Morrison and Dahl expressly authorized payment of the $6,280 by the bank to Morrison so that he, Morrison, could so pledge those funds. Morrison testified: He and Dahl were engaged in a joint venture, not reduced to writing, in which Dahl was to manage the property and attempt to obtain purchasers therefor while Morrison was to receive and handle all funds concerning the property, including the commission in question, and account to Dahl for 50% of the profits ultimately realized; these facts were orally communicated to the bank by himself and Dahl; and the latter expressly authorized the bank to pay the commission to Morrison who would use the $2,600 to liquidate Dahl’s note and pledge the $6,280 as collateral security for the loan to Morrison. Dahl testified there was no joint venture relationship between Morrison and himself and he did not instruct the bank to pay the commission to Morrison for the purpose of the pledge. Counsel for Dahl made timely objection, and reservation of rights under that objection, to all of this testimony.
Counsel for appellant contends the bank was without authority to pay the $6,280 portion of Dahl’s commission to Morrison at the termination of the pledge; that, to the contrary, it was obligated to pay the same to Dahl. He also contends the court erred in admitting, over his timely objection, testimony adding to or changing the terms of the written agreement, citing LSA-C.C. Art. 2276, Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214, Clasen v. Excel Finance Causeway, Inc., La.App., 170 So.2d 924, Terrell v. Wright, La.App., 161 So.2d 103 and National Company v. Harper Aviation, Inc., La.App., 146 So.2d 13 and in permitting, also over timely objection, testimonial proof of an oral joint venture relating to the transfer of immovable property, citing LSA-C.C. Arts. 2275, 2276 and Hayes v. Muller, 245 La. 356, 158 So.2d 191.
 Appellant’s contention relative to the admission of parol evidence is correct to the extent that under our law parol evidence which alters, varies or contradicts the terms of a written agreement is inadmissible and, as between the parties thereto, testimonial proof of an oral joint venture relating to the transfer of immovable property is also inadmissible. But we find that neither rule is applicable here.
The portion of the agreement to which appellant refers reads: “ * * * agent’s commission of $8,880 to be paid by vendor and remain as collateral security for loan except $2,600 to be used to liquidate Dahl note.” None of the testimony objected to alters, varies or contradicts this writing. Insofar as the pledge is concerned, the writing states only that the commission is to be paid by the vendor and remain as collateral security for the loan. It does constitute Dahl’s expressed written consent to the pledge of $6,280 of the commission; but it does not state either the mechanics by which this was to be accomplished or who *582 was to receive the $6,280 at the termination of the pledge. These are details which would not normally and naturally have been included in the writing, a contract primarily between Morrison and the bank. The printed form used to make the written offer did not provide sufficient space for such details. The testimony objected to has reference to a collateral agreement as to these details not included in the writing. Such a collateral agreement does not alter, vary or contradict the writing and is such as would not normally and naturally have been included therein. Parol evidence of such an agreement is admissible. Davies v. William W. Bierce, 114 La. 663, 38 So. 488; Carbo v. Maison Jolie, Inc., La.App., 155 So.2d 238; United Engineering Co. of Louisiana v. Durbin, La.App., 68 So.2d 614.
Testimony that both Dahl and Morrison informed the bank they were engaged in a joint venture was also admissible. It was not offered for the purpose of proving the actual existence of such a relationship; it was offered and served to show only the status of the parties as represented by them to the bank and the fact that the funds, including the $6,280 part of the commission, were to be handled by Morrison. Whether such a relationship actually existed was immaterial here. For we are concerned in this case only with Dahl’s demand against the bank, not with any claim by Dahl against Morrison and not with any claim arising out of or dependent upon the existence of a joint venture as was true in the cited case of Hayes v. Muller, supra.
While we do not condone the action of the bank in paying the pledged money to Morrison without specific written instructions to that effect from Dahl, we find no error in the trial court’s finding and conclusion, based on the testimony of the bank’s vice-president and Morrison as opposed to the testimony of Dahl, that Dahl constituted Morrison his agent to handle and pledge the $6,280, both Morrison and Dahl having informed the bank’s representative they were engaged in a joint venture the funds of which, including the $6,280 were to be handled by Morrison and that, since Dahl could have revoked the agency and did not do so at any time prior to the payment of the funds to Morrison by the bank, Morrison continued to be Dahl’s agent and as such had authority to receive the money. Under the facts of this case payment of the pledged amount to Morrison, prior to any notice or knowledge of Dahl’s adverse claim thereto, released the bank from any obligation it may have had to Dahl.
The only evidence contained in the record relative to the claim for $952.69 allegedly due Dahl by the bank as a result of overpayment of his indebtedness to it is a statement issued by the bank to Dahl and some testimony by the bank’s vice-president concerning that statement. The statement shows “Income" consisting of several items, including one for $952.69 designated “Liquidation of collateral in Discount Dept (net)”, totaling $166,130.88 and “Expenses” consisting of a greater number of items totaling the same amount, $166,130.88. Under these appear "Discount Department”, consisting of proceeds from sale of stock (apparently stock pledged by Dahl to secure the two notes) and the $2,600 used from the Morrison sale commission, totaling $6,248.81 and “Owes”, consisting of the two Dahl notes, principal and interest, in a total amount of $5,296.12. The second figure, $5,296.12, is subtracted from the first, $6,248.81, and the difference, $952.69, is labeled “Net Return”.
As explained by the testimony of the vice-president, and as we understand the statement, the $166,130.88, which appears as the total figure under both “Income1’ and “Expenses" and balances, is the sum which the bank was to realize out of the Morrison transaction, i.e., the amount sufficient to “make the bank whole” for all expenses and loss it had incurred in connection with Dahl’s real estate loan and his two notes, a fact not disputed by Dahl. The $952.69 is shown only as an overpayment of Dahl’s indebtedness on the two notes. But, quite clearly, he is given credit for that overpay *583 ment under "Income” and without such credit the “Income” total would be $952.69 less than the total of “Expenses”. Therefore, the statement not only does not establish that Dahl has made an overpayment, it reflects just the opposite; and Dahl has failed to offer any proof of his claim for $952.69.
The judgments appealed from are affirmed.
Affirmed.