REDMANN, Judge,
dissenting in part.
The current practice of “leasing” equipment needed for one’s business brings many obvious benefits. The “lessee” conserves available capital (or borrowing power) and (at least in a true lease) may find rental more advantageous than depreciation as a deduction for income tax purposes. The “lessor” may make more profit from “rental” than he would have from interest on a loan, and may find equipment ownership a more attractive security device than chattel mortgage.
But leasing is not a thornless rose. A lessee may find that, despite having paid rentals totalling more than the full price of the leased equipment, he does not own the *890 equipment at the end of the lease; and a lessor who is not paid his rent may find disastrous the typical lease-remedy of eviction, because it may leave him with used equipment whose price he has not recovered from the lessee and may be unable to recover by sale or further lease.
Our parties, in any case, did expressly confect their business arrangement as a lease (rather than as conventional financing). The lease in paragraph 7 expressly prevents any possibility of construing it as a “lease-purchase” or conditional sale: Urban as lessee has no option to purchase, no right to acquire title in any manner whatsoever, no rights whatsoever except those of lessee. The lessor, Hertz, also has no rights except those of lessor, unless the contract itself provides some other enforceable right.
The contract does contain a stipulation for “liquidated damages”. Except for any option arising from that stipulation, the basic options available to a lessor whose lessee has not paid the rent are:
1. The lessor may enforce the lease, suing for the rent (even for the balance of the term) and seizing and selling the lessee’s property (including the right to use the leased item during the remainder of the term of the lease);
2. The lessor may terminate the lease, ending the lessee’s right to use the leased item for the remainder of the term of the lease, but also ending the lessor’s right to collect rent for that remainder.
The “liquidated damages” clause in our case seeks to modify the effects of termination, by ending the lessee’s right to use the leased item but not the lessor’s right to collect rent! Worse, the clause would make all installments of rent payable in full immediately as “liquidated damages” rather than over the five-year term of the lease. Thus the clause would provide so-called “liquidated damages” far in excess of conceivable actual damages and it is for this reason alone unenforceable; TAC Amuse. Co. v. Henry, La.App. 4 Cir. 1970, 238 So.2d 398.
The clause is also unenforceable because prohibited by C.C. 1935:
The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more.
Thus a judge may not award other damages for delay in performing an obligation to pay money; Garbo v. Maison Jolie, Inc., La.App. 4 Cir. 1963,155 So.2d 238. The rule of C.C. 1935 that a money creditor “can recover no more” than interest as damages for delay makes unenforceable a contractual provision for liquidated damages (in excess of lawful interest) for breach of an obligation to pay money.
Unlike that in Executive Car Leas. Co. of N.O., Inc. v. Alodex Corp., La. 1973, 279 So.2d 169,[1] this lease does not provide for a “termination value adjustment” which might lawfully relieve the lessor from the loss in market value of a new compared to a used movable (especially, as in Executive, an automobile). Other contractual possibilities come to mind, but these parties have not stipulated for them.
When parties whose fundamental relationship is borrower and lender reject the security devices such as chattel mortgage supplied by Louisiana law and elect instead to adopt the roles of lessor and lessee, the courts should respect the parties’ election and treat them as lessor and lessee. To do *891 so here is to recognize that Hertz terminated its lease with Urban and thereby ended Urban’s obligation to pay rent thereafter. Urban therefore owes Hertz only the $441.60 rent due prior to termination, plus the $985 replacement cost of the lost calculator, or a total of $1,426.60.
I therefore concur in the majority s reduction in the judgment, but I would reduce the judgment even more.

. The majority errs in citing Executive as entitling a lessor to compensation for use of equipment on a quantum meruit basis. In Skrmetta v. State, La.App. 1 Cir. 1968, 206 So.2d 548, also cited by the majority for that principle, it was proved that the state continued to use leased canning equipment after the lease expired. Not only is similar proof not present here: the evidence is to the contrary.