Nos. 775, 874

First Circuit

ITEM CO., LTD., v. POLAZZO ET AL.

(May 5, 1931.  Opinion and Decree.)
(June 16, 1931.  Rehearing Granted.)
(December 8, 1931.  Opinion and Decree on Rehearing.)
(February 1, 1932.  Writs of Certiorari and Review Refused by Supreme Court.)

Borron, Hebert & Owen, of Plaquemine, and Deutsch & Kerrigan, of New Orleans, attorneys for plaintiff, appellant.

Dupont & Dupont, of Plaquemine, attorneys for defendants, appellees.

MOUTON, J. This suit is brought for $249.68, balance on account on a written contract, in solido, against Carlo Polazzo, principal, and Mrs. Parguilla Cerami and Peter Panepinto, as sureties thereon.

Judgment was rendered in favor of plaintiff company against Polazzo, the princi-pal, and in favor of Mrs. Cerami and Pane-pinto, rejecting the demand against them.

Plaintiff company appeals, and is the only appellant.

This opinion will therefore be restricted to the issues in reference to the contro-verted questions between plaintiff and the two sureties.

Plaintiff company, through C. Hayler, its representative, entered into a written con-tract with Carlo Polazzo to furnish him, at certain specified prices, copies of the New Orleans Item, Morning Tribune, and Sunday Item-Tribune during a period of not less than three months.

This contract was signed, as bondsmen, by Mrs. Cerami and Panepinto.

The clause of the contract pertinent to the issue presented for decision reads as follows:

"You may furnish (referring to plaintiff company) to Carlo Polazzo of Plaquemine, La., 'Party of the Second part' such copies of the New Orleans Item, The Morning Tribune and the Sunday Item-Tribune as he may order, and we, the undersigned guarantee the payment to you of his bills at their several maturities, all bills being due and exigible on the semi of each monthly following in which the indebted-ness shall have been incurred by the said party of the second part, and, in the event of the failure on the part of the party of the second part to meet his bills promptly, we promise, severally and collectively to pay you on demand, the full amount due not to exceed Three Hundred Dollars ($300.00)."

The contention of the two sureties is that they obligated themselves under the fore-going terms of the contract to pay the or-ders of Carlo Polazzo, their principal, semi-monthly if credit was extended to him on

a semi-monthly basis; that plaintiff company, in violation of this stipulation in the agreement, sold the papers to Polazzo on terms of monthly credits instead of on a semi-monthly basis.

The court in its opinion said that the ambiguous words "on the semi of each monthly," used in the agreement, were intended to mean, as he understood them, semi-monthly, but nevertheless admitted the introduction of parol evidence to show what was the intent or meaning of the parties to the contract, over the objection of counsel for plaintiff company urged on the ground that there were no allegations of error, fraud, or ambiguity in the answer of defendants.

Under the provisions of article 2276, C. C., no parol evidence is permitted against or beyond what is contained in the written acts of the parties thereto. This is elementary, and the courts have invariably excluded such evidence to alter, vary, or contradict contracts in writing, without allegations of fraud or error. Counsel for defendants contend that the same rule applies where an ambiguity in a written agreement is sought to be cleared up by verbal proof.

In support of that contention counsel refer us to the case of Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214, 216, where the court said the intentions of the parties could not be sought outside the four corners of the written instrument. The court said, however, that when the terms of the agreement are so ambiguous that they are not susceptible of intelligent construction, parol evidence may be admitted to make clear what is obscure and this is followed by the following significant remark, quoting:

"But it is certainly in direct contraven-tion of article 2276, Civ. Code, to admit parol, not to explain, but to add to and contradict, a written agreement."

The court in its ruling in that case draws a marked distinction between parol proof offered, for the purpose of explaining a written agreement by that kind of evidence, and when introduced not to explain but to add to or to contradict its terms. This ruling is in perfect harmony with article, C. C. art. 2276, which excludes evidence of that character when admitted against or beyond what is contained in the acts.

In the final ruling of the court in the case above cited, in referring to the evidence therein introduced for the purpose of adding to or contradicting the written agreement, it is stated that it should have been excluded, which clearly indicates that there were no averments of fraud or error in the pleadings, as otherwise it is obvious the admission of the evidence below would have been approved. The opinion also shows, according to the reasoning of the court, that if the parol evidence had been introduced solely for the purpose of "explaining" the contract or to make clear "that which was obscure," the court would not have said that it should have been excluded. Hence, from our analysis of that opinion, we find that a latent ambiguity in a written instrument may be explained by parol without the necessity of pleading fraud, error or ambiguity to support such evidence.

In the case of Destrehan v. Lumber Co., 45 La. Ann. 921, 13 So. 230, 232, 40 Am. St. Rep. 265, the court, quoting from Best on Evidence, p. 231, says:

"That the written instrument fairly and fully represents the intent of the parties at the time of its execution, the duty of the court becomes merely one of inter-

pretation and construction of the language employed. * * * That meaning, once ascertained, is incontrovertible by any parol evidence. No new words can be added. The court cannot, as is said, travel out of the four corners of the paper. But the language to be interpreted is to be read in the light of all surrounding circumstances (as the phrase is), it being obviously impossible to tell what a man has said until it is ascertained what he has meant to say. Any relevant evidence, therefore, which fairly partakes of explanation, or is reasonably calculated to place the court in the situation of the parties at the time of the execution, will, in general, be received."

When the language of the instrument is clear, the meaning of the contracting parties, it is well settled, must be sought within its four corners. Where there is a latent ambiguity and the intent of the parties is shrouded in obscurity, parol is admissible to make "clear what is obscure," and to explain the intent of the parties at the time of the execution of the instrument. The purpose of such testimony is evidently not to alter, vary, add to, or contradict the contract, but simply to ascertain the intent of the parties, and to carry out its provisions according to their understanding at the time of its execution. Such has been the ruling of our courts on this subject. Adeline Sugar Factory Co. v. Evangeline Oil Co., 121 La. 961, 46 So. 935; Mixon et al. v. St. Paul Fire & Marine Insurance Co., 147 La. 302, 84 So. 790; Tremont Lumber Co. v. Peavy, 162 La. 35, 110 So. 79.

In affirming this rule of evidence in Bagley v. Rose Hill Sugar Co., 111 La. 249, 35 So. 539, the court refers to the case of Bayley, Testamentary Executor, v. David Denny, 26 La. Ann. 255. That case directs us to Greenleaf on Evidence, chapter 15, par. 286. That author, in his usual lucid style, has the following to say on the subject:

"The duty of the Court in such cases is to ascertain not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of words they have used. It is merely a duty of interpretation, that is, to find out the true sense of the written words, as the parties used them; and of construction, that is, when the true sense is ascertained, to subject the instrument, in its operation, to the established rules of law."

Now, proceeding to exercise the true functions of the court, we shall, from the parol evidence introduced to explain the latent ambiguity in the written agreement in question, endeavor to ascertain the true sense of the written words, as the parties used them, and according to our finding, "subject the instrument in its operation, to the established rules of law."

The district judge seems, from his written opinion, to have inclined to the conclusion that the payments required of Polazzo under the terms of the clause of the agreement, above referred to, were to be made semi-monthly or every fifteen days. We think that the meaning of the parties, as expressed therein, is rather uncertain or indefinite and that the resort to parol evidence to elucidate the ambiguity lurking therein will afford a better solution of the issue presented.

Polazzo, the principal, Mrs. Cerami and Panepinto, sureties, testified on this subject, and also Marquette, circulating bookkeeper for plaintiff company.

Polazzo is certain that when the contract was executed it was understood that he was to make his payments every fifteen days.

Mrs. Cerami testifies that when she signed the contract it was understood that

fifteen days were to be the terms of credit given to Polazzo.

Panepinto says that the terms of payment for the papers were fixed for every two weeks.

Marquette, circulating bookkeeper, testifying for plaintiff company, explains that the sale of the papers to their dealers were on different terms of credit; some on a basis of thirty days, and others on a weekly, semi-monthly, or fifteen-day basis.

The preponderance of the evidence, we find, establishes the fact that the stipulations of the contract provided for sales on fifteen-day terms of credit, and that the guarantee by the sureties was to secure prompt payments by the principal at the time designated.

The testimony of Polazzo is that the papers were sold him on the term of fifteen days' credit. The account annexed to the petition, and the allegations in reference thereto, support the foregoing statement. Independently of these allegations and annexed account, the evidence, however, is sufficient to sustain that conclusion.

The court below found that the sending of the accounts every thirty days was not a manifestation of a mere indulgence or forbearance on the part of plaintiff in the collection of its credits. The court correctly concluded that Polazzo was dealt with in such a way as "to completely change the maturities of his obligations as originally set out in the written contract to which the guarantors were parties."

The case which was conducted on the foregoing lines shows that there was a prolongation of the terms granted to the principal debtor without the consent of the sureties, which operated a discharge of the latter. C. C. art. 3063.

———

## ON REHEARING

PER CURIAM. We granted a rehearing in this case, restricted to the question of extension of term of payment on the obligation, which would release the sureties, under the authorities referred to in the application therefor. After considering the case again, we desire to correct an oversight, and, at the same time, to explain and modify the last paragraph in our opinion; but in other respects our former opinion is to remain unchanged.

We now say, however, that there was no consideration received for an extension of the terms of the maturities of the obligation sued on from a semi-monthly to a monthly period of payment; that the plaintiff, the Item Company, sold and delivered the papers to Carlo Polazzo as dealer on monthly terms of credit instead of semi-monthly terms of maturities, as stipulated in the obligation on which it is seeking to hold Mrs. Pasqualle Cerami and Peter Panepinto liable as sureties. The matter which we wish to correct is that our opinion, through oversight, says that Carlo Polazzo testified that the papers were sold to him on the term of 15 days' credit. We should have said that he testified that the papers were sold to him on terms of 30 days' credit. His testimony is that plaintiff sold him papers by the month, and sent him bills monthly on said account.

T. J. Marquette, plaintiff's bookkeeper, testifies that plaintiff sent bills to Polazzo once a month, and that the papers were sold to him on 30 days' credit. We quote plaintiff's bookkeeper as follows:

"Q. But in the case of Mr. Polazzo, the Item Company dealt with him on an extension of 30 days' credit?
"A. Yes, sir."

The account sued on, annexed to and made part of plaintiff's petition, shows daily sales for monthly periods of time, and indicates monthly periods of payment. The sureties, Mrs. Cerami and Mr. Panepinto, bound themselves on an obligation which stipulates for semi-monthly payments, and are sought to be held liable as sureties on a dealing based on monthly payments, to which they are not parties and did not consent.

The argument used and authorities cited in plaintiff's brief are applicable to a case coming under the provisions of the Civil Code, art. 3063, but the prolongation referred to has reference to the obligation for which the sureties bound themselves, not to a situation like the present in which the sureties are sought to be held on a contract to which they did not consent and are not parties. The situation, disclosed by the record is like that which existed in White Castle Lumber & Shingle Co. v. Le Blanc, 114 La. 425, 38 So. 407, in which the court said:

"The signers of the document bound themselves with reference to one contract, and they are sought to be held upon another."

It is upon this ground that we predicate our opinion and decree. Subject to the change and modification made, and as above stated, our former opinion and decree herein is deemed correct, and the same is now reinstated and made the final judgment of this court.