140 So.2d 815 (1962)
MARCANN OUTDOOR, INC., Plaintiff and Appellee,
v.
W. Rigsby HARGROVE et al., Defendants and Third-Party Plaintiffs-Appellees;
Johnny ABRUSLEY, Defendant and Third-Party Defendant-Appellant.
No. 545.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1962.
Rehearing Denied May 24, 1962.
*816 C. W. Berry, Jr., Oakdale, for third-party defendant-appellant.
John P. Navarre, Oakdale, for defendants-appellees.
Before SAVOY, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This suit was instituted by Marcann Outdoor, Inc., against Dr. W. Rigsby Hargrove, Vernon E. Knowles and Bertie's Eat Shop, a partnership composed of Hargrove and Knowles, for the principal sum of $1,063.61, plus interest and attorney's fees, which amount is alleged to be the balance owed by defendants to plaintiff under two lease contracts for highway advertising signs. Defendants filed an answer denying liability, and they also filed a third party petition against Johnny Abrusley alleging that Abrusley had specifically *817 assumed the indebtedness due Marcann Outdoor, Inc., when he purchased the business known as Bertie's Eat Shop on August 27, 1959. Abrusley, third party defendant, filed an answer in which he denies that he ever assumed this indebtedness. Therefore, plaintiff amended its petition to include Abrusley as a party defendant.
After trial of the case on its merits judgment was rendered by the trial court in favor of plaintiff and against the original defendants for the amount claimed, and judgment further was rendered in favor of Dr. Hargrove and against Abrusley for the same amount. Abrusley has appealed from that judgment.
The evidence shows that prior to August 27, 1959, the restaurant business known as Bertie's Eat Shop, in Oakdale, was owned by a partnership composed of Hargrove and Knowles. On August 27, 1959, this business was sold to Johnny Abrusley for a consideration of $10,000.00, a portion of which was paid at the time of the sale and the remaining balance was paid within approximately one year thereafter. At the time this sale was completed, and as evidence of the sale, a written agreement was entered into between Dr. Hargrove and Johnny Abrusley, which agreement contains the following provision:
"It is understood and agreed that all debts and obligations outstanding as of this date will be the responsibility of Dr. W. Rigsby Hargrove; that all debts and obligations incurred after this date will be the responsibility of the said Johnny Abrusley."
Some time after this sale was completed a dispute arose between the parties as to whether Abrusley, by that agreement, had assumed and obligated himself to pay the balance due under the two road sign rental contracts on which this suit is based, both of which contracts previously had been entered into between Marcann Outdoor, Inc., on the one hand, and Bertie's Eat Shop, represented by Vernon E. Knowles, on the other. Under the terms of one of these sign rental contracts, dated April 15, 1957, the partnership obligated itself to pay to Marcann the aggregate sum of $38.40 per month for 36 months from and after the date the signs are erected. Under the second contract, which is dated August 1, 1957, Bertie's Eat Shop obligated itself to pay to Marcann the aggregate sum of $67.20 per month for a period of 36 months from date of erection of the signs. Although the record does not show when the signs were erected, there is no dispute as to the fact that under both of these contracts the monthly payments were due in advance on the 22nd day of each month, and that the 36-month term provided by each contract had not expired when Bertie's Eat Shop was sold to Abrusley on August 27, 1959. Also, all parties apparently concede that the amount claimed by Marcann in this suit is the actual balance due it under those contracts.
Hargrove and Knowles paid all of the monthly installments due under these two contracts from the date each contract was executed until August 28, 1959. They have refused to make any of the monthly payments which became due under those contracts after that date, however, because they contend that Abrusley assumed and obligated himself to pay the installments which became due after the sale was completed.
At the trial Abrusley's attorney objected to the introduction of parol testimony by third party plaintiffs tending to explain the contract of sale dated August 27, 1959, or to show the intent of the parties at the time it was entered into, the basis of his objections being that there was no ambiguity in the written contract of sale. The trial court concluded that the contract was ambiguous, and accordingly parol testimony was admitted to show the actual intent of the parties. The court then concluded that Abrusley had assumed and had obligated himself to pay the balance due under both of these road sign contracts at the time he purchased Bertie's Eat Shop.
*818 Appellant contends primarily that the trial court erred in admitting parol testimony tending to show the intent of the parties in entering into the written contract dated August 27, 1959. It is argued that the meaning of the words "outstanding" and "incurred" is clear and unambiguous, that the debts and obligations due under both of the sign rental contracts were "outstanding" at the time the sale of the cafe was completed, that these obligations were not "incurred" after that date, and accordingly that the amounts due under those contracts are the responsibility of Hargrove and not Abrusley.
Article 2276 of the LSA-Revised Civil Code provides that, "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." The jurisprudence is settled to the effect that when the provisions of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence, and the meaning or intent of the contracting parties must be sought within the four corners of the instrument. When the terms of the written contract are susceptible of more than one interpretation, however, or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract and to show their intent in doing so. Leiter Minerals, Inc. v. California Company, 241 La. 915, 132 So.2d 845; Dufrene v. Tracy, 232 La. 386, 94 So.2d 297; Plaquemines Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171; Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363; Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228; Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214; St. Landry State Bank v. Meyers, 52 La.Ann. 1769, 28 So. 136; Esso Standard Oil Co. v. Texas & New Orleans Railroad Co., La.App. 3 Cir., 127 So.2d 551; Item Co. v. Polazzo, 1 Cir., 18 La. App. 594, 134 So. 345.
While it is true that the words "outstanding" and "incurred" may have well defined meanings, we are unable to determine solely from the provisions of the contract between Hargrove and Abrusley whether Abrusley by that agreement assumed or obligated himself to pay the monthly rental payments on the road sign contracts which became due after the sale was completed. The payments which later became due on the road sign contracts were not "outstanding" at the time the sale of the cafe was completed, and thus according to the written contract they were not the responsibility of Hargrove. On the other hand, these rental payments which became due after August 27, 1959, were not "incurred" after that date, and according to the contract they were not assumed by Abrusley, although it must be conceded that one of the two parties to the contract of sale is obligated to pay the amount claimed by plaintiff. The contract, therefore, is subject to two inconsistent interpretations. Also, there seems to be no question but that under the terms of the contract of sale Hargrove was relieved of any further obligation to pay the rental payments which thereafter became due under the preexisting lease affecting the premises where the cafe business was being conducted, and it is argued with persuasive logic that the same interpretation should be applied to the sign rental contracts.
Since the intent of the parties with reference to the payment of the balance due under the sign rental contracts cannot be determined solely from an examination of the written contract of sale dated August 27, 1959, we conclude that the trial court correctly permitted the introduction of parol testimony to show the true intent of the parties in that respect.
The evidence is conflicting as to whether Abrusley discussed these road sign contracts with Hargrove and Hargrove's business *819 manager, Alvin B. Pitts, prior to and at the time the sale of the case was completed. Hargrove and Pitts both testified that they discussed the matter with Abrusley prior to the sale of the cafe and that it was agreed that Hargrove would pay the monthly rentals due for these signs up to the date of the sale and that Abrusley would pay them after that date. Abrusley denies that he was ever informed of the existence of the road sign contracts prior to the sale of the cafe or that he ever agreed to assume any part of that indebtedness. J. C. Ricketts, who managed the restaurant for Abrusley immediately after the purchase was completed, testified that he knew nothing of the road sign contracts prior to the sale of the cafe, and that during the discussions in which he participated prior to and at the time of the sale he heard nothing mentioned about these signs.
The evidence establishes, however, that on or shortly after August 28, 1959, the day after the cafe was sold, Marcann submitted two statements for the rental due on the road signs for the month beginning August 22 and ending September 22, 1959. One statement was submitted to Hargrove covering the six-day period from August 22 to August 28, in the amount of $21.12, and this sum was paid to plaintiff by Hargrove. The second statement, for the sum of $84.48 and representing the rentals due for the balance of that month from August 28 to September 22, 1959, was submitted to Abrusley, through his manager J. C. Ricketts, and that amount was paid by Abrusley. The rental due under the road sign contracts for the following month, amounting to $105.60, was paid by Abrusley, and after that an additional payment of $55.00 was made to plaintiff by Abrusley to apply on the road sign rental due for the succeeding month.
Shortly after January 1, 1960, Abrusley changed the name of the restaurant to "Johnny's Eat Shop," and thereafter he refused to make any further payments to Marcann, although he did offer to pay the rental due up to January 1, 1960. He contends that in making these payments on the sign rental contracts after purchasing the cafe, he did not intend to acknowledge that he had undertaken to pay all of the balance due on those contracts, but that he made the payments simply because he had received some benefit from the signs up to the time he changed the name of the cafe, and he felt a moral obligation to pay the rentals due for that period.
The trial judge concluded that it was the intention of the parties in connection with the sale of the cafe that Abrusley would pay the monthly rentals which became due under the road sign contracts from and after the date of that sale. In his excellent written reasons for judgment, the trial judge said:
"It is this Court's opinion that the manner in which this contract was interpreted by the parties for several months after the sale conclusively demonstrates that it was the intention of the parties that Mr. Abrusley would pay the monthly rentals to become due on the signs subsequent to the date of the sale. That this was their intention insofar as the monthly rentals on the building which became due on the long term lease subsequent to August 27, 1959 is not subject to question.
"For these reasons, Dr. Hargrove is entitled to a judgment against Mr. Abrusley for the same amount as has been rendered in favor of Marcann against him."
Article 1956 of the LSA-Revised Civil Code provides that "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." In some cases the construction placed upon a contract by the parties, as shown by the manner in which it was executed by them after the contract was executed, is the best *820 evidence as to the meaning of the contract or the intent of the parties when they entered into the agreement. Tynes v. Kelly, La.App. 1 Cir., 116 So.2d 54; James v. LeBlanc, La.App. 1 Cir., 95 So.2d 175; Pendleton v. McFarlane, 222 La. 569, 63 So.2d 1.
We think the evidence in the instant suit supports the conclusion reached by the trial court that the manner in which the contract of sale was interpreted and executed by the parties for several months after the sale was completed establishes that in connection with that sale Abrusley intended to assume and to pay the monthly rental payments which became due under the road sign contracts after the sale was completed. Accordingly, we conclude that the judgment of the trial court is correct.
For the reasons herein assigned, therefore, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied. *899