SAVOY, Judge.
Plaintiff filed suit against defendant for specific performance pursuant to a written agreement between the parties *126 dated November 6, 1964, praying- to be decreed the owner of an undivided one-half interest in an oil, gas and mineral lease affecting certain property in Acadia Parish, Louisiana, and described in his petition.
Defendant filed an answer denying the material allegations of plaintiff’s petition, stating further that plaintiff had breached the contract of November 6, 1964. Then, assuming the position of plaintiff-in-re-convention, defendant stated that plaintiff (defendant-in-reconvention) had filed a lien against the property in dispute in the •sum of $3,387.58, together with legal interest, attorney’s fees and costs of recording; said lien purportedly representing ■expenses paid by plaintiff for the account ■of defendant on wells on the said property. Plaintiff (defendant-in-reconvention) filed •an answer to the reconventional demand, ■stating that the aforesaid lien was true :and correct, and prayed that the recon-■ventional demand be dismissed.
The contract of November 6, 1964, de-belares that defendant is the owner of two wells located on certain property which defendant has under lease from the owners. The wells were designated as C. M. Click and August Leonards No. 1, and C. J. 'Click and August Leonards No. 2-A with ten acres designated as units around each of said wells. The agreement states that plaintiff has re-worked both wells mentioned above and installed in said wells certain equipment which has been paid for, except a compressor unit with the necessary attachments.
Under the contract plaintiff obliged himself to commence drilling operations of another well on the leased premises on or before December 1, 1964, at a site selected by him, and to drill said well to a depth of 4,550 feet unless oil, gas or other minerals were discovered in paying quantities .at a lesser depth.
The controversial portion of the contract is contained in the following paragraphs of the agreement and read as follows :
“Second Party is to commence drilling operations upon another well at a location to be selected by him upon the leased premises on or before December 1st, 1964, and to pursue the drilling of said well with due and reasonable diligence to a depth of 4,550 feet unless oil, gas, or other minerals are found in paying quantities at a lesser depth.
“Before Second Party shall be required to commence drilling operations, First Party must exhibit to Second Party an oil, gas, and mineral lease owned by First Party covering, affecting, and relating to the above described land which is in full force and effect.
“Second Party is to pay all drilling and operating costs to the time that drilling operations are commenced on the first well, thereafter, First and Second Party are to share operating expenses equally.
“If Second Party should elect not to abandon the first well drilled hereunder, then Second Party shall on or before 60 days after the expiration of the primary term of the lease under which said well is drilled commence actual drilling operations for a second well upon the leased premises at a location to be selected by him and shall pursue the drilling of said well with due and reasonable diligence to a depth of 4,550 feet unless oil, gas, and other minerals are found in paying quantities at a lesser depth.
“When Second Party has drilled, completed, and/or abandoned the two wells provided for herein, at his own and sole cost and expense, then First Party shall assign to Second Party an undivided one-half interest in and to the lease or leases owned by First Party, as well as all wells, casing, tubing, tank batteries, or other equipment and improvements located upon said wells SAVE AND EXCEPT the compressor unit which is now installed upon said wells, which *127 is under a lease purchase agreement. When this unit shall have been paid for, it shall belong to the two parties in the proportion that they own the leases and wells.
“Before Second Party may abandon any well drilled hereunder, he must give First Party notice in writing of his election to do so, and First Party shall have five (5) days dated from such notice within which to elect to take the said well over and if he so elects, the well shall thereafter belong to First Party in full ownership with no further obligation toward said well on the part of Second Party.
“Should Second Party fail and neglect and refuse to drill the two wells as provided for herein, subject to the other provisions of this agreement, then, the lease, wells and all equipment, supplies, etc., shall irrevocably belong to First Party, except that Second Party does not own the compressor unit and First Party shall acquire only the interest therein held and owned by Second Party-
“The production from all wells already drilled or to be drilled upon the lease or leases now standing in the name of First Party shall belong to First and Second Party equally, commencing as of August 1st, 1964, and same shall continue in such fashion so long as this agreement is in force.
“Upon the completion of the wells by Second Party, First and Second Party shall execute another instrument acknowledging this condition or accomplishment and providing for a working agreement whereby Second Party is nominated as the operator. This shall be in the form generally employed in the Gulf Coast and shall provide for the Mid-Continent form of method of accounting.”
The record reveals that plaintiff drilled the first well, designated as A-3 Leonard, to a depth of 4,550 feet and abandoned it as a dry hole. This was done with the consent of the defendant.
On February 5, 1965, defendant wrote plaintiff a letter stating that in the absence of drilling operations, the primary term of the lease which he had with the landowners was to terminate on March 2, 1965, and that if plaintiff did not commence to drill a well by February 15, 1965, he would consider the lease terminated.
On February 9, 1965, plaintiff wrote defendant and stated that while he was willing to drill a second well, from the geological reports he had received, he was of the opinion that the second well would, if drilled, be a dry hole. Fie offered defendant $3,-000.00 if he did not have to drill the second well and released defendant from any interest in the lease except for the two reworked wells, Click and Leonard 1 and 1-A.
On February 16, 1965, plaintiff wrote defendant that he would commence drilling operations on well No. 2 on or before March 1, 1965. He commenced drilling operations on February 26, 1965. The well, A-4 Leonard, was drilled to the required depth of 4,550 feet without a show of oil, gas or other minerals in paying quantities.
Plaintiff gave proper notice prior to his-proposed abandoning of A-3 and A-4 Leonard well to defendant of his right to takeover the wells as per this agreement.
Defendant did not exercise this option as-to either well.
On March 23, 1965, attorney for plaintiff sent to defendant an act of assignment. On May 5, 1965, counsel for plaintiff wrote-defendant that unless he executed and returned the assignment within the next days, suit would follow. On May 13, 1965, counsel for plaintiff wrote another letter to defendant asking for the execution and return’ of the assignment. On May 14, 1965, counsel for defendant notified plaintiff that since he had not complied with his agreement of November 6, 1964, the contract was-terminated and that he would not assign- *128 the interest in the lease as requested by plaintiff.
This suit followed.
On the trial of the case, plaintiff introduced, over objection of counsel for defendant, testimony by Mr. Wesley Clanton who prepared the agreement in question. He stated the agreement was that if plaintiff drilled two wells to the specified depth mentioned in the contract, whether or not they were producers, he was entitled to an assignment from defendant of an undivided one-half interest in the lease or leases owned by defendant, as well as all wells, casing, tubing, tank batteries, etc.
Plaintiff also introduced in evidence a letter written by defendant to plaintiff on February S, 1965, making a demand on plaintiff to commence drilling of a second well by February 15, 1965.
Counsel objected to the introduction of parol evidence to vary the terms of the contract between the parties, which he states is an authentic act and is full proof of the agreement between the parties under the provisions of LSA-C.C. Article 2236.
In the case of Marcann Outdoor, Inc. v. Hargrove, (La.App. 3 Cir., 1962), 140 So. 2d 815, this Court said:
“Article 2276 of the LSA-Revised Civil Code provides that, ‘Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.’ The jurisprudence is settled to the effect that when the provisions of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence, and the meaning or intent of the contracting parties must be sought within the four corners of the instrument. When the terms of the written contract are susceptible of more than one interpretation, however, or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract and to show their intent in doing so.” (Citations omitted.)
In the opinion of this Court, the contract between the parties is unambiguous. However, assuming ambiguity, the evidence accords with our construction of the agreement.
Mr. Clanton represented the landowners. Plaintiff went to his office in order that the contract be prepared. Defendant made several changes in the original contract, and then signed it.
Mr. Clanton testified that it was the intention of the parties that after plaintiff drilled the first well to the required depth, he could either not drill a second well and the contract would be terminated, or he could drill a second well to the required depth, and whether it was completed as a producer or abandoned as a dry hole, upon the completion or abandonment of the second well, he was entitled to an assignment of an undivided one-half interest in the lease owned by defendant on that date. This interpretation was confirmed by defendant in his letter to plaintiff dated February 5, 1965, wherein he made a demand on plaintiff to drill a second well because if it was not drilled by March 2, 1965, he would lose his mineral lease.
It is the opinion of this Court that in view of the testimony of Mr. Clanton and the letter written by defendant to plaintiff dated February 5, 1965, it was the intention of the parties that when plaintiff had drilled two wells to a depth of 4550 feet, whether they were producers or dry holes, he was entitled to receive an assignment from defendant of an undivided one-half mineral interest in the lease in force and owned by defendant on that date.
In the original judgment in the instant case rendered on August 9, 1966, and signed *129 on September 9, 1966, no mention was made of the reconventional demand of defendant (plaintif f-in-reconvention).
After the signing of the September 9, 1966, judgment defendant filed a motion for a new trial. Counsel for plaintiff then filed a rule to amend the judgment mentioned above to provide for a dismissal of the reconventional demand. On a hearing of both motions on September 23, 1966, the trial judge denied the motion for a new trial and allowed an amendment to the original judgment so as to allow the dismissal of the reconventional demand. The amended judgment was signed on the same day it was rendered. This appeal followed.
Counsel for defendant complains that the trial judge was in error in allowing the amended judgment, for he states that under the provisions of LSA-C.C.P. Article 1951, a final judgment may be amended to alter the phraseology of the judgment but not the substance.
Article LSA-CCP 1974 provides:
“The delay for applying for a new trial shall be three days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.
“When notice of the judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.”
Although the record indicates that the trial judge denied the motion for a new trial he at the same time amended the original judgment in the instant case and dismissed the reconventional demand filed by Stagg. We think the ruling has the effect of granting a new trial and thereafter amending the original judgment and dismissing the reconventional demand. We think this ruling was correct.
We are also of the opinion that the lien filed by plaintiff is valid.
The contract between the parties provides that upon completion of the two wells the parties shall enter into an operating agreement; that the agreement shall provide that should either party be thirty days delinquent in paying his portion of the operating cost, the party paying the obligations shall have a lien and privilege upon the other’s share of the leases, wells, etc. Plaintiff, having had to pay all of the charges against the lease, is entitled to a lien.
For the reasons assigned, the judgment of the district court is affirmed at the cost of appellant.
Affirmed.