339 So.2d 942 (1976)
George RENAUDIN et al.
v.
ZAPATA DEVELOPMENT CORPORATION.
No. 7669.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1976.
Rehearing Denied December 14, 1976.
Writ Refused February 9, 1977.
Barry F. Viosca and Allen C. Hope, Jr., New Orleans, for plaintiffs-appellees.
*943 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John W. Haygood, New Orleans, for defendant-appellant.
Before SAMUEL, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
This is an appeal from a judgment ordering defendant, Zapata Development Corporation, to refund a $50,000 deposit made by plaintiffs, George Renaudin, William S. Renaudin and Gerald G. Pfister, in connection with their negotiations to purchase a 785-acre tract of land in Terrebonne Parish. At the outset, the prospective seller was aware plaintiffs were attempting to acquire the site for construction of a hospital complex or other commercial buildings. The sale was never concluded because Zapata's ownership was burdened with mineral servitudes whose holders refused to execute waivers that would give plaintiffs unrestricted use of the surface rights to the land should they buy it. Zapata refused to refund the $50,000 deposit, contending it was consideration for a 90-day option that plaintiffs failed to exercise; or alternatively, it was earnest money if the court determined that there was a contract to sell, which sum plaintiffs forfeited by their refusal to accept title. Plaintiffs contend it was an earnest money deposit to be applied against the purchase price.
After reviewing the writings exchanged between the litigants relating to the proposed transfer and the parol evidence offered to explain them, the trial judge concluded there was no contract because there was no meeting of the minds. He held the defendant's retainment of the deposit resulted in an unjust enrichment. In response to defendant's appeal from this result, plaintiffs answered seeking a return of double the deposit plus out-of-pocket damages they incurred on the theory that the contract to sell was completed and defendant failed to tender merchantable title within the time prescribed in the contract.
Of the specification of errors assigned, appellant's complaint that the trial court erred in admitting parol evidence is an appropriate starting point. C.C. art. 2276[1] prohibits the introduction of parol evidence to add to or contradict a written agreement but does not forbid the admission of testimony to clarify ambiguous writings and ascertain the true intent of the contracting parties. This was pointed out by the Supreme Court in Bank of Napoleonville v. Knobloch & Rainold[2] in language appropriate to the case before us:
"When persons commit their agreements to writing, their intentions and purposes cannot be sought outside the four corners of the written instrument. Where the terms of the agreement, however, are so ambiguous as not to be susceptible of intelligent construction, parol evidence may be admitted to make clear that which is obscure * * *." 80 So. at 216.
Appellant would limit our inquiry to one of a series of documents exchanged by these parties in an attempt to reach a meeting of the minds. If we were to isolate the language they cite from the balance of the written exchanges, it might support defendant's claim the $50,000 was paid and accepted for a 90-day option in plaintiffs' favor. However, when viewed as a whole, they simply indicate the parties unsuccessfully negotiated to enter into a valid buy-sell agreement. Couched in obscure terms, the ambiguities in the writings that predate January 1974 clearly exempt this case from the C.C. art. 2276 parol evidence ban.
Before describing the portions of the documents relevant to this case and the explanatory facts, we note that plaintiffs had bought property from defendant twice before. On both occasions surface rights were cleared before plaintiffs took title. In fact *944 the sales would not have been confected without a grant of unrestricted surface rights to the vendees because American General Insurance Company of Houston, Texas, the lending agency with which plaintiffs financed their purchases, made granting of the loans contingent on the acquisition of unrestricted surface rights.
In point of time the first document evidencing an intent of Zapata to sell the 785-acre tract was an exclusive listing agreement captioned an "Authorization of Sale", dated January 19, 1973, in favor of "Allen Samuels, Inc., and/or Eric Snyder" that was to remain effective until May 30, 1973. The sale price specified was $2,500,000 net to seller. The listing agreement required:
"Purchaser shall deposit $50,000.00 as earnest money to be applied to the purchase price at the act of sale which shall be within ninety (90) days of the signing of the purchase agreement."
This document expressly excluded sale of the minerals.
By letter of May 24, 1973, Zapata agreed to extend the authorization (listing agreement) to August 31, 1973. A handwritten notation indicates Zapata authorized the brokers to reduce the purchase price to $2,250,000 and reaffirmed all other conditions in the January agreement.
Zapata rests its right to retain the $50,000 as consideration for an option based upon its letter of September 14, 1973 addressed to the brokers, which we quote:
"Messrs. Allen Samuels, Inc. and Eric Snyder
3400 North Causeway
Metairie, Louisiana 70002
Re: Authorization of sale concerning 785 acres in Terrebonne Parish, Louisiana Dated January 19, 1973
Gentlemen:
Zapata Development Corporation hereby agrees to extend the above authorization until October 1, 1973. The receipt of the required $50,000.00 earnest money deposit is hereby acknowledged.
In addition to terms and conditions contained in the above agreement, Zapata Development Corporation agrees to:
Purchaser shall have the right to purchase subject property for cash in the amount of $2,250,000.00; such right shall be exercised by purchaser's depositing an additional $50,000.00 within ninety days after the date of this letter. In the event purchaser so elects, closing shall take place within ninety days after the payment of the second $50,000.00
Other than the change above, all terms and conditions of said agreement shall remain in full force and effect.
Sincerely yours,
(s) Christian N. Seger"
From this document it appears the nature of the $50,000 received as earnest money was not changed by mutual consent to be consideration to support a 90-day option. The amending language simply indicates an additional $50,000 would have to be deposited when and if the offer was accepted. There is nothing to indicate the seller stipulated it would retain the earnest money if the parties were not able to reach an agreement to terms and conditions that could be incorporated into a contract to sell. The language that suggests an option was granted is:
"Purchaser shall have the right to purchase subject property for cash in the amount of $2,250,000.00; such right shall be exercised by purchaser's depositing an additional $50,000.00 within ninety days after the date of this letter. * * *" (Emphasis added.)
The emphasized wording is often used in contracts granting an option, yet the reaffirmation of the terms and conditions of the original listing agreement in which the $50,000 was treated as a deposit to be applied to the purchase price creates confusion. C.C. art. 1949 directs us to look to prior or subsequent writings to resolve the doubt. We think the writings considered as a whole evince an intent to pay and accept the $50,000 as a deposit toward a *945 future sale, not consideration to support the granting of an option.
Even were we to conclude no clear intent emerges and the reason for the payment of $50,000 remains obscure, C.C. art. 1958 would require our resolving the ambiguity against defendant.
Whatever rights were acquired by the brokers Samuels and Snyder by the writings detailed were assigned to plaintiffs on November 8, 1973. Before the assignment was taken, Pfister telephoned Christian Seger, vice president of Zapata, to advise that surface rights were a problem. Seger was aware the purchasers could not use the land or obtain financing if they were not cleared. Because Seger assured Pfister the surface rights could be cleared, Pfister entered into the assignment agreement on plaintiffs' behalf.
In January 1974 the principals to this agreement and various advisory persons met in New Orleans to formalize the terms previously discussed. This was never accomplished. The purchasers did not sign an agreement prepared by a Texas attorney, and the prospective seller refused to sign a written agreement prepared by the wouldbe buyers' Louisiana attorney. Title was never tendered by the seller.
In short, there was no contract. Defendant could not deliver unrestricted surface rights, and without this, the purpose for which plaintiffs wished to acquire the land could not be accomplished.
Under these facts the trial court properly treated this as an action in rem verso and ordered defendant to return the $50,000 on the theory it had a quasi contractual obligation to restore funds that unjustly enriched it at plaintiffs' expense. The concept and application of the unjust enrichment remedy is discussed at length in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Equitable in nature, it is available to afford relief if a related enrichment and concomitant loss is not supported by consideration and there is no other procedural device that can be used to redress the injustice. The facts of this case warrant our application of the Minyard rule.
Having concluded there was no contract obviates our considering the answer to this appeal.
For the reasons assigned the judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant.
AFFIRMED.
NOTES
[1] "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." C.C. art. 2276.
[2] 144 La. 100, 80 So. 214 (1918).