366 So.2d 944 (1978)
Gerald W. RUTHERFORD, Plaintiff and Appellee,
v.
Leon V. IMPSON, Sr., Defendant and Appellant.
No. 12310.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
Rehearing Denied January 16, 1979.
Writ Refused March 16, 1979.
*945 Robert G. Levy, Baton Rouge, counsel for plaintiff and appellee.
Kenneth J. Fogg, Denham Springs, counsel for defendant and appellant.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
Defendant-appellant, Leon V. Impson, Sr., appeals an adverse judgment of the trial court ordering him to convey a certain parcel of land to plaintiff-appellee, Gerald W. Rutherford. Plaintiff answered the appeal seeking, in addition to the specific performance awarded in the trial court, reasonable attorney's fees based upon defendant's bad faith breach of contract to sell.
In late March or early April of 1977, plaintiff found himself desirous of purchasing a certain tract of twenty-one acres in Livingston Parish. The land was owned by seven brothers and sisters of the Impson family who were apparently well known to Rutherford. An oral agreement to buy and sell the property was made between Rutherford and each of the seven brothers and sisters, the sale to close when Rutherford sold his house. Pursuant to that agreement, a purchase agreement was executed with a third party to purchase plaintiff's home. As a result of a conversation with Leon Impson, who indicated he was having doubts about selling the twenty-one acres, Rutherford decided to get the agreement in writing.
Rutherford drew up the following agreement which was subsequently signed by all the heirs on or before April 19, 1977.
"We the undersigned
"(1) (signed) Ashford A. Impson
"(2) (signed) Florence I. Drowns
"(3) (signed) Joe W. Impson
"(4) (signed) Annie I. Snyder
"(5) (signed) Beverly I. Miller
"(6) (signed) Leon V. Impson
"(7) (signed) Delia I. Miller
"Here by agree to sell the following 21 acres described as being located in Section 56, T-5-S, R-2-E Livingston Parish, La. and being bounded now or formerely [sic] on the north, by the north line of said Section 56, on the north by land of Edward Cornich, and La. Hwy 16 on the east, and by V. R. Impson on south & C. I. Thames on west. We agree to sell to (signed) Gerald W. Rutherford the afore mentioned property for the sum of $42,000.00, providing clear title can be obtained." (Record, p. 13)
Testimony established that it was the intent of the parties that the sale would be closed as soon as practical after the closing of the sale of Rutherford's home.
Rutherford, with the permission of Ashford Impson and presumably the other vendors as well and with the knowledge of Leon Impson, took possession of the premises in early May and made extensive renovations to the house located on the property including rewiring, reflooring and some remodeling, the costs of which were in the neighborhood of $5,000 to $6,000.
The agreement to sell to Rutherford was executed in late June, and the closing of the sale was set for July 5. Leon Impson did not attend the closing, having informed Rutherford that he was going to north Louisiana to buy horses. Two weeks later the defendant told plaintiff he was not sure whether he would go through with the sale. Plaintiff made demand, through his attorney, on defendant to transfer his portion on July 20, 1977, and subsequently filed suit seeking specific performance of the purchase agreement.
The trial court, without assigning written reasons, awarded specific performance to the plaintiff, ordering defendant to convey his portion of the property to plaintiff. Defendant appeals. We affirm.
*946 Defendant argues that the document signed by him on April 19 was a unilateral offer to sell which did not bind the plaintiff in any way. As an offer, defendant claims that he was free to withdraw it at any time prior to its acceptance and that he orally revoked the offer prior to July 5, 1977. Finally, defendant asserts that since there was no mutual or reciprocal consent, no contract resulted and specific performance was improperly ordered.
We are to decide whether the April 19th agreement was a binding agreement to sell.
Our law requires that any agreement to buy and sell immovables must be in writing. LSA-C.C. art. 2275; Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir. 1976). Parol evidence may not be admitted to create title in one who never owned the immovable. Fleming v. Romero, 342 So.2d 881 (La.App. 3rd Cir. 1977), writ refused, 345 So.2d 50 (1977); Scurto v. Le Blanc, 191 La. 136, 184 So. 567 (1938). Neither may parol evidence be admitted to modify or contradict what the parties have set down in their written agreements. LSA-C.C. art. 2276; Renaudin v. Zapata Development Corporation, 339 So.2d 942 (La.App. 4th Cir. 1976), writ denied, 341 So.2d 1123 (La.1977). However, where an agreement is ambiguous in its terms such that reasonable minds may differ as to its meaning, extrinsic evidence may be considered to find the true intent of the parties. Renaudin v. Zapata Development Corporation, supra; Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214 (1918).
In the agreement before us Rutherford signed his name in the blank space following the words "We agree to sell to." Ordinarily, the offeree's name would have simply been printed in this space which Rutherford utilized for his signature. Nevertheless, we are satisfied from the evidence that Rutherford's signature therein was for the purpose of accepting the offer to sell the property.
Much testimony regarding the intent and understanding of the parties in confecting the agreement was received in evidence. This evidence, particularly the testimony of the other vendors, convinces us that all parties believed they were entering into a binding purchase agreement and that Rutherford's placing of his signature thereon was a manifestation of his intent to accept the offer and become bound. This is borne out more completely by the subsequent taking possession and extensive repair work by Rutherford.
We also find, contrary to defendant's contention, that the closing was to be held within a reasonable period of time after the purchase agreement was executed to allow the closing of the sale of Rutherford's home and do not consider July 5 to have been beyond that reasonable time.
LSA-C.C. art. 2462, in pertinent part, states:
"Art. 2462. Specific performance of options and promises to sell
"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same."
Counsel for defendant correctly points out that the right to specific performance is not absolute and is only available where the remedy at law is inadequate. LSA-C.C. arts. 1926 and 1927; Thompson v. Thompson, 211 La. 468, 30 So.2d 321 (1947). However, it has usually been held that damages are an inadequate remedy for breach of a contract to sell real estate. Thompson v. Thompson, supra.
We believe all the requisites of Article 2462 have been met. The document contains the price, an adequate description of the property and manifests reciprocal consent to buy and sell. We, therefore, agree with the trial court's awarding specific performance and ordering defendant to convey the property to the plaintiff.
The final issue to be addressed is plaintiff's request for damages of reasonable attorney's fees for bad faith breach of the agreement by the defendant. Plaintiff's *947 request is based on LSA-C.C. arts. 1926, 1930 and 1934.
LSA-C.C. art. 1934, in pertinent part, provides:
"Art. 1934. Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
"1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.
"2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this.
* * * * * *
"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
Plaintiff claims that had the defendant not breached his obligation to convey the property he would not have expended the attorney's fees necessary to enforce his rights under the contract and that unless he is awarded attorney's fees, he will not be made whole.
As a general rule attorney's fees are not allowed a successful litigant in Louisiana except where authorized by statute or by contract. Nassau Realty Company, Inc. v. Brown, 332 So.2d 206 (La.1976); Inzer v. Hollis, 339 So.2d 522 (La.App. 2nd Cir. 1976), writ denied, 341 So.2d 1124 (1977). Furthermore, an action for breach of contract does not fall within one of the limited exceptions to this rule. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). This is because the parties had an opportunity to stipulate in the contract that attorney's fees would be due in the event the contract was breached. The parties having failed to expressly provide an obligation to pay attorney's fees, the law will not imply one.
The Second Circuit Court of Appeal rejected the identical argument advanced before this Court in Lloyd v. Merit Loan Company of Shreveport, Inc., 253 So.2d 117 (La. App. 2nd Cir. 1971), writ denied, 259 La. 1050, 254 So.2d 462 (1971). There the Court expressly overruled Raney v. Gillen, 31 So.2d 495 (La.App. 2nd Cir. 1947), and Berry v. Ginsburg, 98 So.2d 548 (La.App. 2nd Cir. 1957), cases cited by counsel in support of an award of attorney's fees. The Court held that even if it could be shown that the defendants were in bad faith, this would not entitle the plaintiffs to recover attorney's fees in the action.
We hold, therefore, that plaintiff is not entitled to attorney's fees in an action to specifically enforce an agreement to buy and sell real estate.
Plaintiff also seeks attorney's fees for the cost of having to defend the appeal and cites numerous cases to support his claim. We find, however, all the cases cited inapposite since they all involved situations where the plaintiff was entitled to attorney's fees under either a specific statutory provision such as LSA-C.C. art. 2545 (redhibition), a contractual agreement between the parties, or an exception to the general rule (misuse of conservatory procedure). In all those cases, the appellate court merely increased the award of attorney's fees by *948 the trial court sufficient to cover the cost of the appeal.
Here, as noted above, there is no authority to grant attorney's fees as a measure of damages. Therefore, we reject plaintiff's request for attorney's fees to cover his cost of appeal.
For the above reasons, the judgment of the trial court is affirmed, defendant-appellant to pay all costs.
AFFIRMED.