COVINGTON, Judge.
This is an action for executory process brought by Walter W. Baker, Alden Lee Baker and Anna Mercer Baker Naquin to foreclose on property which had been conveyed by the plaintiffs, the Bakers, to J. B. and Frances Faith Hogle Purselley, the vendees, by credit deed dated April 7, 1978, and duly recorded in the official records of Tangipahoa Parish, Louisiana, which action has been consolidated with an action for specific performance and injunctive relief to arrest the seizure and sale under the executory process brought by the Purselleys against the Bakers. In connection with the action for injunctive relief, the trial court granted a temporary restraining order and fixed a rule to show cause why a preliminary injunction should not be granted. Allen B. Pierson, Jr., who was named as man-datary in the credit deed to execute appropriate releases as the circumstances dictated, was also sued as a defendant in the action brought by the Purselleys. The Bakers moved to dissolve the restraining order. Thereafter, the Purselleys filed an amending petition. Pending the action, one of the parties, Alden Lee Baker, died, and his estate was substituted as a party. The defendants in the latter action answered, denying the pertinent allegations and asserting a compromise agreement between the parties.
The facts as established by the evidence in the record giving rise to these consolidated actions are:
On April 7, 1978, Anna Mercer Baker Naquin, Alden Lee Baker and Walter W. Baker sold to J. B. Purselley and Frances Faith Hogle Purselley, vendees, a tract of land situated in Section 47, Township 7 South, Range 7 East, Tangipahoa Parish, Louisiana, under an act of credit sale, which act was duly recorded in the Conveyance and Mortgage Records of Tangipahoa Parish. The sale was for a total price of $249,-020.00, and was to be payable $115,000.01 cash, with the balance of the purchase price ($134,019.99) represented by three promissory notes in the amount of $44,673.33 each, payable in four consecutive annual installments of one-fourth of the principal, plus accrued interest at the rate of nine percent per annum.
At the passage of the act, the vendees were unable to pay the agreed cash portion of the sale price, so they paid $80,000.00 in cash and executed three additional promissory notes, payable on or before one year from date, as follows: (1) $7,500.00 payable to Walter W. Baker; (2) $7,500.00 payable to Anna Mercer Baker Naquin; and (3) $20,000.00 payable to Alden Lee Baker. These notes were paraphed for identification with an act of special mortgage, dated April 7, 1978, in the amount of $35,000.00 secured by other real estate of the vendees.
Also contained in the act of credit sale was a provision whereby the vendors released ten acres of the tract transferred, leaving approximately 28 acres encumbered by the credit deed.
Following the description of the property transferred, the act provided: “Should the vendees harvest any timber on the property remaining encumbered by this credit deed all of the proceeds of the sale of that timber shall be paid immediately to vendors. The amount so paid shall be credited against the interest accrued to that date and the remainder against the principal due on the next payment due date. Thereafter on the *555 next payment due date the amount due shall be the interest accrued from the date of the last timber sale payment plus the balance of the principal due on that date.
“During the first year following the execution of this credit deed Vendors bind and obligate' themselves to grant to Vendees partial releases covering portions of the property encumbered. As a consideration for the releases, Vendees shall prepay $5,265.46 per acre released which amount shall be credited against the interest accrued to that date and the remainder against the principal due on the next payment due date. Thereafter on the next payment due date the amount due shall be the interest accrued from the date of the last release payment plus the balance of the principal payment due on that payment date. During the second, third and fourth years following the execution of this credit deed the Vendors shall be similarly obligated to grant releases except that the amount per acre to be prepaid by the Vendees shall be $3,948.80, $2,632.54 and $1,316.27 respectively.”
Also, the instrument reserved to the vendors, for a period of ten years, a one-half interest in the oil, gas and other minerals. There was no provision reserving any rights to the timber, except that proceeds from timber sales had to be disbursed to the vendors as set out above.
Further, the instrument recited that: “Vendors do hereby appoint Allen B. Pier-son, Jr. as their agent and attorney in fact for the purpose of granting and executing on their behalf the releases contemplated by this paragraph and they do hereby authorize him to receive and to receipt for the prepayment necessitated by the releases and instruct him to immediately forward one-third (Vá) of the same to each of them.”
Subsequent to the credit sale, the vendees sold certain pine timber to Phillips-Lamb Lumber Company by a timber deed dated June 19, 1978. The proceeds derived from the sale of the timber on the 28 acre tract were at that time paid to the mandatary. On June 1, 1979, the vendees paid the vendors the sum of $7,162.74, which represented the outstanding interest on the three notes secured by the credit deed on the 28 acre tract sold to the Purselleys. No further payment was made by the vendees.
Following the trial, the trial judge, with written reasons, rendered judgment on July 6, 1981, ordering Allen Pierson, as agent of the vendors, to convey title to the vendees of a 6.35 acre tract of land described in the judgment; enjoining the seizure and sale of the 28 acre tract in the executory proceedings; and denying the motion to dissolve the restraining order. It is from this judgment that the Bakers have appealed. We amend, and as amended, we affirm.
On this appeal, the appellants assert the following specifications of errors:
Specification of Error No. 1. “The District Court erred in ordering Allen B. Pier-son, agent and attorney for appellants to convey title to appellee to the tract of land described in the judgment containing 6.35 acres.”
Specification of Error No. 2. “The District Court erred in failing to find a compromise agreement had been entered into between appellants and appellees prohibiting the release of any portion of the property on the credit sale and further prohibiting the enjoinment of the sheriff’s sale on the 28 acres.”
Specification of Error No. 3. “The District Court erred in failing to cancel the temporary restraining order issued on August 26th, 1980 . . . and ordering appellees to pay damages to appellants for the unlawful issuance of the temporary restraining order.”
First, the appellants argue that the trial court erred in ordering the release from the mortgage effects of the credit sale the tract of land described in the judgment as containing 6.35 acres, and ordering the mandatary to convey title to the described tract of land to the Purselleys.
The first issue is concerned with whether specific performance should have been granted by the trial court, ordering the Bakers, through the agent, to convey the described acreage to the Purselleys.
*556 The language of the credit sale pertaining to the sale of timber is set out above and indicates the price to be paid per acre of the acreage which is to be released; and Allen B. Pierson, Jr. is appointed the “agent and attorney in fact” of the Bakers (vendors) to collect money and grant release of land which has been paid for. In the instrument, there is a provision on the sale of the timber and credit for said sale, amounts to be paid per acre for releases, appointment of an agent (Attorney Pierson) to collect money and grant releases, and a clause which indicates that “amounts paid for releases and/or for the timber sold shall be considered part of the next installment due.” From the language and order of the provisions of the credit sale, we find that the sale of timber was contemplated by the parties.
As set out above, the instrument gave the option of harvesting the timber to the Pur-selleys, stating: “Should the vendees harvest any timber on the property remaining encumbered by this credit deed all of the proceeds of the sale of that timber shall be paid immediately to vendors.” In the case at bar, all of the proceeds of the timber sale on the 28 acre tract were paid on June 19, 1978 (but credited June 22, 1978), by payment of the sum of $35,522.62 to Attorney Pierson on behalf of the Bakers. The timber-harvesting provision also states: “The amount so paid shall be credited against the interest accrued to that date and the remainder against the principal due on the next payment due date.” The interest to date on June 22, 1978 was $2,511.50 and that amount was properly credited. The remaining amount, or $33,011.12, was then credited to principal due on the next payment date (which was April 7, 1979). Since the first installment amount was $33,403.99, an additional check of $493.88 dated June 22,1978, was given to the mandatary by the vendees, and credited so as to make a total of $33,505.00 paid June 22, 1978 on the amount owed April 7, 1979. Hence, the amount owed on principal on April 7, 1979 was zero, but the interest on the principal balance from June 22, 1978 to April 7, 1979 was $7,162.73, which the Purselleys paid and which was credited in April of 1979.
Further, the credit sale summarizes: “Thereafter on the next payment due date the amount due shall be the interest accrued from the date of the last timber sale payment plus the balance of the principal due on that date.” The next payment due date from June 22, 1978 (the date of the timber sale) was April 7, 1979. Since the vendees had paid the principal balance of $33,505.00 on June 22, 1978; the interest to June 22,1978 of $2,511.50 on June 22, 1978; and the interest from June 22,1978 to April 7, 1979 of $7,162.73 on April 26, 1979, the first installment payment for the release of acreage calculated at $5,265.46 per acre was made in accordance with the contract.
The words “and/or” clearly indicate that “amounts paid for releases” is the same as “timber sold for releases.” When this language is considered with Attorney Pierson’s testimony that there were about 6.5 acres which should be released and Mr. Pursel-ley’s testimony that he was going to clear the land, sell the timber, and build houses on the land released, we conclude that the Purselleys were entitled to specific performance of the contract and to a release of 6.35 acres.
 Specific performance is available as a remedy where the remedy of damages is inadequate; it has usually been held that damages are an inadequate remedy for breach of a contract to sell real estate. See Rutherford v. Impson, 366 So.2d 944 (La.App. 1 Cir. 1978), writ denied, 369 So.2d 140 (La.1979). Similarly, damages are an inadequate remedy for breach of the contract to release certain portions of the property from the mortgage effects of the credit sale upon the partial payment of the purchase price in accordance with the contract.
LSA-C.C. art. 1757 declares that a civil obligation (a contract) gives “the right of enforcing its performance by law.” LSA-C.C. art. 1799 states that there is the “presumption of law that in every contract each party has agreed to confer on the other the right of judicially enforcing the performance of the agreement. . . . ” LSA-C.C. *557 1927 provides for damages in “ordinary cases, .. . but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance . ... ” See Abraxas Film Corporation v. Weinberg, 384 So.2d 463 (La.App. 4 Cir. 1980).
The arrangement with Pierson was in the nature of an intermediary agreement whereby he would act as mandatary[1] for both vendors and vendees. LSA-C.C. art. 3016.[2] Pursuant to LSA-C.C. art. 3017[3], Pierson was a fiduciary who was obligated to perform his duties faithfully for both parties, which fiduciary obligation the evidence reflects he was most careful to honor. See United Companies Mortgage and Investment of Hammond, Inc. v. Estate of McGee, 372 So.2d 622 (La.App. 1 Cir. 1979). At no time did he try to favor one party over another to the other’s disadvantage. But, whatever may be the denomination of Pierson’s relationship to the parties in this contract, the vendors had no right or power to unilaterally terminate, restrict or change his authority to carry out his agreed fiduciary obligations to both parties. Moreover, the vendors covenanted to execute partial releases in favor of the vendees under certain terms and conditions.
The trial court stated in its “Reasons for Judgment”:
“The court must further look at the entire transaction. It finds the credit sale names Allen Pierson as the agent for the Bakers. Further it finds he served as attorney for Purselley. Mr. Pierson, in actuality, attempted to serve as a mediator. In the highest degree of ethics, upon realizing the matter must be resolved by litigation, Mr. Pierson removed himself as attorney and correctly recommend[ed] to Mr. Purselley he engage counsel other than himself.
“The letter was written in behalf of Pur-selley as a mediator between the parties. Mr. Pierson remained of record an agent for the Bakers. Therefore the letter of July 1, 1980 had no legal or binding effect.
“Therefore, the question of injunctive proceeding and Specific Performance is resolved in favor of the Purselleys’ [sic] and against the defendants in suit no. 60,146.
“However, the acreage to be released, which in fact was released on June 22, 1978, was not specified. P-14 demonstrates a plot of survey by Earle F. Wilson, III dated February 22, 1978 which is redlined by Allen Pierson who was the Agent of Baker at that time. This demonstrates the intent to release this specific portion; therefore, there shall be a decree by this court ordering a release unto the plaintiffs (Purselleys) a certain tract of land described as follows:
“A certain parcel of land, with all buildings and improvements thereon, located in Section 47, Township 7 South, Range 7 East, Greensburg Land District, Tangipa-hoa Parish, Louisiana, containing 6.35 acres and being more fully described as follows:
“Commence at a point 691.52 feet North of the Southwest Comer of Section 47, Township 7 South, Range 7 East and from that point of beginning run North 89° 39' East 1159.20 feet, then run North 31° 26' West to the Southeast corner of a ten acre tract owned by Purselley, described in credit deed as recorded in MOB 305 page (112-117), then measure South 89° 39' West 1002.81 feet along the *558 Southern property line of Purselley; then measure South 255.88 feet back to the point of beginning.”
We find that the record supports this ruling.
However, we find that the trial court erred in ordering title to the above property be conveyed to the vendees by the vendors’ agent. Title to the land in question has already been conveyed to the Purselleys by the credit sale of April 7, 1978. When this litigation commenced, they were the owners of the land in controversy, subject to the encumbrance in favor of the vendors and the reservation of a one-half interest in the oil, gas and other minerals. The judgment will, accordingly, be amended to delete the order that Pierson convey title to the described property; and to recognize J. B. and Frances Purselley as owners of the described 6.35 acre tract, with the described property ordered released from the mortgage effects of the credit deed.
As their second specification of error, the appellants contend that the trial court erred in failing to find a compromise agreement had been entered into between the Bakers and the Purselleys to the effect that the Purselleys agreed not to enjoin the foreclosure sale and not to demand release of any portion of the tract of land covered by the credit sale if the Bakers met certain conditions and waived certain claims.
The record reflects that the Pursel-leys did not authorize their attorney to settle the claim on their behalf. A party’s counsel does not have authority to compromise his client’s claim without his client’s “clear and express consent.” See Singleton v. Bunge Corporation, 364 So.2d 1321 (La.App. 4 Cir. 1978). Further, the evidence does not establish that the Purselleys consented to compromise.[4] The actions of the parties and the facts surrounding the asserted compromise in the instant case do not show that the Purselleys and the Bakers mutually consented to the compromise. See Jones v. Tharpe Brothers Builders, Inc., 335 So.2d 709 (La.App. 2 Cir. 1976).
The trial court found that the Purselleys did not agree to the conditions of the letter which Attorney Pierson sent to Attorney Rodney Cashe dated July 1, 1980. The evidence shows that there was no acknowl-edgement of the compromise by the Pursel-leys.
The evidence shows that the Purselleys would not sign the agreement (signed by the defendants on August 5, 1980); instead, they retained counsel to enjoin the executo-ry proceedings. The record does not reveal that the Purselleys considered that they were giving up their rights to the release of the acreage in question. We find that there was no compromise.
The third issue is whether the vendors were entitled to damages because the vendees failed to put up a bond for the temporary restraining order.
Security is not required when the enforcement of the debt secured by the mortgage or privilege is premature. LSA— C.C.P. art. 2753(2). Under the circumstances of this case, the institution of executory process to enforce the indebtedness was premature. See General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La.1980).
Moreover, the parties converted the exec-utory proceeding into an ordinary proceeding pursuant to LSA-C.C.P. art. 2644, and actually held a trial on the merits in the consolidated suits.
Furthermore, we agree with the trial court that the vendees were entitled to enjoin the seizure and sale in the executory proceedings instituted by the vendors.
Therefore, we amend the judgment and recast it to read as follows:
“The Court now concluding that the law and the evidence are in favor of the plaintiffs, J. B. Purselley and Frances Faith Hogle Purselley, for the reasons assigned in *559 the written opinion of this Court filed in the record February 17, 1981.
“It is Ordered, Adjudged, and Decreed that:
“1. J. B. Purselley and Frances Faith Hogle Purselley are hereby recognized as owners of the following tract of land, described as follows:
“A certain parcel of land, with all buildings and improvements thereon, located in Section 47, Township 7 South, Range 7 East, Greensburg Land District, Tangipa-hoa Parish, Louisiana, containing 6.35 acres and being more fully described as follows:
“Commence at a point 691.52 feet North of the Southwest corner of Section 47, Township 7 South, Range 7 East and from that point of beginning run North 89° 39' East 1159.20 feet, then run North 31 ° 26' West to the Southeast corner of a ten acre tract owned by Purselley, described in credit deed as recorded in MOB 305 page (112-117); then measure South 89° 39' West 1002.81 feet along the Southern property line of Purselley; then measure South 255.88 feet back to the point of beginning. The above described land is subject to a reservation by the vendor for a period of ten years commencing from the 7th day of April, 1978 through the 6th day of April, 1988 of one-half (V2) of all oil, gas and other minerals.”
“2. The above described tract of land is ordered released from the effects of the mortgage contained in the credit deed dated April 7, 1978, of record in MOB 305, page 112 of the records of Tangipahoa Parish, Louisiana and the Clerk of Court and Ex-Officio Recorder of Mortgages for Tangipa-hoa Parish is hereby authorized and directed to cancel and erase from the records of his office the inscription of said mortgage insofar only as it bears on and affects the property herein described, and no further.
“3. The execution of the foreclosure sale in the proceedings entitled ‘Walter W. Baker, et al. versus J. B. Purselley, et ah, No. 59,202 on the docket of the 21st Judicial District Court, Parish of Tangipahoa’ is enjoined.
“4. The motion to dissolve the restraining order filed on behalf of Walter W. Baker, Alden Lee Baker, and Anna Mercer Baker Naquin is denied.
“5. All costs of this proceeding are assessed against the Defendants, Anna Mercer Baker Naquin, Estate of Alden Lee Baker, and Walter W. Baker.”
For the assigned reasons, we amend the judgment appealed; and as amended, we affirm. The appellants are cast for costs of this appeal.
AMENDED AND AFFIRMED.

. A mandatary or agent may be defined as one who acts for or in place of another person by authority from him. LSA-C.C. arts. 2985, 2986, 2992; Craft v. Trahan, 351 So.2d 277 (La.App. 3 Cir. 1977), writ refused, 353 So.2d 1336 (La.1978).

. Article 3016 states:
“The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both.”

.Article 3017 states:
“The obligations of a broker are similar to those of an ordinary mandatary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another.”

. The purported compromise, filed in evidence, was signed by the Bakers but not by the Pursel-leys, either personally or through their agent.