**OWL CONSTRUCTION CO., INC.**

v.

**RONALD ADAMS CONTRACTOR, INC. and Ronald J. Adams.**

**Civ. A. No. 83–2596.**

United States District Court, E.D. Louisiana.

June 9, 1986.

See also, 727 F.2d 540.

H.P. Rowley, Covington, La., for Owl Construction Co., Inc.

John A. Stewart, Jr., Gwendolyn S. Hebert, Hulse, Nelson & Wanek, New Orleans, La., for Ronald Adams Contractor, Inc. and Ronald Adams.

PATRICK E. CARR, District Judge.

## REASONS

This matter came on for trial by jury on May 19, 1986. The plaintiff, Owl Construction Company, Inc. (OWL), sought to recover damages and attorneys fees from defendants Ronald Adams Contractor, Inc. and Ronald J. Adams.[1] OWL asserted: 1) a private cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1964(c), 1962(c),

---

1. Hereinafter jointly referred to as Adams. Ronald J. Adams is the sole shareholder and principal officer of the defendant corporation.

(d); 2) the commission of an abuse of process under Louisiana law; 3) violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1405, *et seq.;* and, 4) unjust enrichment.[2] Adams counterclaimed seeking sanctions and attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure for the bringing of frivolous or vexatious claims.

At the end of the presentation of all evidence, both sides moved for directed verdicts. Initially, the Court denied all motions; however, on reconsideration, the Court directed a verdict in favor of the defendants on the claims under RICO, abuse of process and unfair trade practices. Further, the Court directed a verdict in favor of the plaintiff and defendant in counterclaim, OWL, on the claims of unjust enrichment and frivolous filings under F.R. C.P. Rule 11. The Court now renders its written reasons for the previously rendered directed verdicts.

The Court has jurisdiction pursuant to the Civil RICO statute, 18 U.S.C. 1964(c) and 28 U.S.C. 1331 for federal questions, with pendent jurisdiction over the state claims. Venue is proper.

The facts are not in dispute. On December 21, 1982, OWL contracted with Adams for the purchase of approximately 5,000 yards of sand at $4.00 a cubic yard. The sand was to be used on a federal construction project on which OWL was a subcontractor. (Exhibits P–26(A), (B) and (C)). The agreement provided for payment in full within fifteen days from the date of invoice. (Exhibits P–1 and P–2).

OWL was sent typewritten invoices on January 3rd and 13th, 1983 for a total amount due of $18,336.00. (Exhibits P–4 and P–6). Printed invoices were sent in the same amount on January 17th and 27th, 1983. (Exhibits P–23(A) and (B)). Despite amicable demand, OWL failed to timely pay the amount due. (Exhibits P–7 and P–8). Subsequently, Adams sent printed invoices

to OWL which included finance charges for amounts past due at an interest rate of 1–½% per month plus attorneys' fees of 25%. With the addition of these finance charges, the total amount claimed by Adams was $18,611.04. (Exhibit D–8). OWL paid $4,000 but failed to pay the remainder. Hence, the principal amount due was reduced to $14,336.00. (Exhibit D–11). Finance charges continued to be added by Adams. (Exhibit P–9).

Finally, on May 3, 1983, Adams filed a lien in the parish mortgage office and sent a formal demand letter to OWL seeking a total of $15,052.66[3] and asserting the right to 25% attorneys fees on the amount due if not paid within 30 days. (Exhibit P–11). On May 17, 1983, under protest, OWL paid the full amount claimed of $15,052.66. (Exhibit P–25A). Adams refused to cancel the lien unless the attorneys' fees were also paid. (Testimony of Ronald J. Adams). Also under protest, OWL paid $3,763.17 in attorneys' fees. (Exhibit P–25B). This litigation followed.

In order to prevail in a civil action under RICO, plaintiff must establish the following elements by a preponderance of the evidence: 1) a violation of the substantive RICO statute, 18 U.S.C. § 1962; and 2) an injury to his business or property by reason of such violation. 18 U.S.C. § 1964(c); *Sedima S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Alcorn County, Miss. v. U.S. Interstate Supplies,* 731 F.2d 1160 (5th Cir.1984). To establish a violation of Section 1962, the plaintiff must, by a preponderance of the evidence, prove the conduct and existence of an enterprise which affects interstate or foreign commerce. The plaintiff must also prove that the defendants were employed by or associated with the enterprise, participated in the conduct of the enterprise's affairs, and that this participation was through a pattern of racketeering activity. *Id.*

---

**2.** Plaintiff had also asserted fraud and misrepresentation which claims were abandoned at trial in that plaintiff offered no evidence in support thereof.

**3.** This amount included the principal sum of $14,336.00 plus $716.66 in finance charges.

■ In order to satisfy the jurisdictional element of interstate commerce, the plaintiff must prove that the activities of the enterprise affect interstate commerce or that it engages in interstate commerce. This is a minimal requirement. *Alcorn County,* supra; *U.S. v. Stratton,* 649 F.2d 1066 (5th Cir.1981). In this regard, OWL produced no evidence to support this interstate commerce element of its claim. Hence, the Court directed the verdict on the RICO claim in favor of defendants.

The remainder of this litigation involves Louisiana law. OWL first claimed that the filing of the lien and subsequent refusal to cancel unless attorneys fees were paid constituted an abuse of process and an unfair trade practice.

■ The essential elements of a cause of action for abuse of process are 1) the existence of an ulterior purpose; and 2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. The plaintiff must also prove damage resulting from the abuse. *Weldon v. Republic Bank,* 414 So.2d 1361 (La.App. 2d Cir. 1982) and cases cited therein.

It is not disputed that the lien was improperly filed in the mortgage office of the parish of LaFourche, Louisiana. The filing of the lien was without legal effect for the reason that claims for monies owed arising out of contracts on federal projects are confined to federal court. 40 U.S.C. § 270a, *et seq.* Hence, the plaintiff did show that the process of filing the lien was improper.

The abuse of process, however, must also be willful and undertaken with an ulterior purpose or motive in order to employ the process in the performance of some other function than that intended by law. Further, the abuse must have damaged the plaintiff in some manner. *Id.* First, because the lien was without legal effect, it could in no way have caused damage to the plaintiff. Plaintiff produced no evidence to show otherwise. Second, Adams was attempting to collect sums owed to it for the purchase of the sand. The Court finds as a matter of law that there can be no "ulterior

purpose" in the attempt to collect money owed. The sole intent of the defendants was to protect their interests in the collection of the money admittedly owed to them by plaintiff OWL for materials supplied.

One of the purposes of the Louisiana Public Works Act was to ensure payment to suppliers of materials furnished to a contractor or subcontractor. *Thurman v. Star Electric Supply, Inc.,* 307 So.2d 283 (La.1975). Hence, the filing of this lien was not a perversion of the law or its intended purpose. While the filing was improper, the use of the process in this manner was not undertaken for an ulterior purpose, in bad faith or for a use not intended by the law. *Weldon,* supra. Hence, the Court directed a verdict on this claim of abuse of process in favor of the defendants.

■ La.R.S. 51:1405, *et seq.* outlaws unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business. Actual damages and attorney fees are recoverable to any person who suffers an ascertainable loss of money or property as the result of the unfair trade practice. Being penal in nature, the statutes are strictly construed; however, whether or not a practice is unfair is left for the courts to determine. It has been held that a practice is unfair when it is immoral, unethical, oppressive, unscrupulous, offensive to established public policy or substantially injurious to consumers. *Coffey v. Peoples Mortgage & Loan of Shreveport, Inc.,* 408 So.2d 1153 (La.App. 2d Cir.1981).

The Court finds as a matter of law, that the action of defendants in filing the lien did not constitute an unfair trade practice. An attempt to collect that which is admittedly due and owing, albeit through an improper channel, is not an unfair trade practice. *See: Bank of New Orleans & Trust Co. v. Phillips,* 415 So.2d 973 (La. App. 4th Cir.1982); *Coffey,* supra. Therefore, the Court again directed the verdict in favor of the defendants on the claim of unfair trade practices.

OWL next sought recovery on the theory of unjust enrichment. This is an equitable remedy founded upon the principle that no one should be enriched at the expense of another. La.C.C. articles 1965 (1870), 1878, 2053, 2054, 2055 (1985); *Edmonston v. A-Second Mortgage Company of Slidell, Inc.*, 289 So.2d 116, 120 (La.1974); *Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 431 (La.1967). The remedy is available if

a related enrichment and concomitant loss is not supported by consideration and there is no other procedural device that can be used to redress the injustice.

*Renaudin v. Zapata Development Corp.*, 339 So.2d 942, 945 (La.App. 4th Cir.1976).

█ In order to prevail in an action for unjust enrichment: 1) there must be an enrichment; 2) there must be an impoverishment; 3) there must be a connection between the enrichment and the impoverishment; 4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and 5) the action will only be allowed when there is no other remedy at law, i.e.: the unjust enrichment action is subsidiary or corrective in nature. *Edmonston*, supra; *Minyard*, supra.

In the case at bar, the plaintiff asserted that the defendants were not entitled to collect interest at 1–½% per month on the amount due or the 25% attorneys fees. OWL asserted, therefore, that defendants were unjustly enriched in those amounts.

Under Louisiana law, interest and attorneys fees are either legal or conventional. If interest is not contractually provided for, a creditor is nevertheless entitled to collect 12% legal interest (1% per month) on the amount due from the date on which the debt became due. Additionally, the law provides that the parties may contractually bind themselves for the payment of attorneys fees. La.C.C. articles 2000 (1985), 1935, 1938, 1939, 1940 (1870).

In the case at bar, the agreement for the purchase of the sand did not provide for the payment of interest or attorneys fees. (Exhibits P–1 and P–2). Printed invoices from Adams to OWL contained such provisions; however, OWL did not agree to these additional finance charges of 1–½% per month or to the 25% attorneys fee assessment. (Exhibits P–23(A) and P–23(B)). Hence, the parties did not contract for such charges. Under the law, therefore, Adams was only entitled to collect interest at 1% per month on the amount due beginning 15 days from the date of the initial invoice, as opposed to the 1–½% per month actually charged.

As for the 25% attorneys fees collected by Adams, Adams does not dispute the fact that the parties did not contract for the payment of such fees. Rather, Adams claims that it was entitled to the attorneys fees under the Louisiana Open Account Law, La.R.S. 9:2781. That statute is penal in nature and provides for the award of reasonable attorneys fees if the creditor has strictly complied with the statute in suing on the open account. See: *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014 (La.1984).

At the time the parties entered into the contract for the purchase of the sand, the Louisiana Open Account Law did not apply to single transaction occurrences such as the one in the case at bar. The statute was extended to such single business transactions by the addition of sub part C, Act 311 of 1983. Had the new subsection been in existence at the time of the contract this transaction might have been an open account. However, the substantive change is not to be retroactively applied. See: *Commercial Credit Claims Services, Inc. v. Richardson*, 454 So.2d 177 (La.App. 1st Cir.1984); *All Star Floor Covering, Inc. v. Treece*, 442 So.2d 655 (La.App. 1st Cir. 1983). Even assuming that the transaction in the case at bar could be considered one on an "open account", the defendants failed to comply with the statute and would nevertheless not be entitled to collect reasonable attorneys fees. By charging an incorrect amount of interest in the written demand, defendants failed to correctly set forth the amount owed, a strict require-

ment of the statute. *Frank L. Beier Radio,* supra.

Based upon the foregoing, the plaintiff satisfied the first four prerequisites for its action of unjust enrichment. The defendants were "enriched" as a result of the unjustified and improper collection of the incorrect amount of interest and the attorneys fees. This enrichment was the direct result of the plaintiff's "impoverishment".

Defendants argued that OWL failed to establish the final element of its cause of action in that it did not lack another remedy of law. Defendants asserted that instead of paying the sums, OWL should have pursued other procedural avenues in order to have the lien cancelled. For this reason, defendants assert that the plaintiff is not entitled to recover.

■ Defendants misconstrue the final requirement for an unjust enrichment action. Regardless of whether or not the plaintiff could have pursued other legal avenues in order to cancel the lien, the fact remains that plaintiff presently has no other legal remedy to recover the sums improperly paid. The action of unjust enrichment is corrective in nature. There is no other avenue by which the unjust payment or enrichment may be corrected. *See: Renaudin,* supra.

■ Defendants also argue that voluntary payment, through error, is not recoverable. This argument also lacks merit. Louisiana law provides that a person who has paid, through mistake or error, is entitled to reclaim that which was paid. La.

C.C. art. 2302. Further, a person who receives that which is not due is obliged to return it. La.C.C. art. 2301. Negligence *per se* is not a bar to recovery for payment of a thing not due. *Tischler v. City of Alexandria,* 471 So.2d 1099 (La.App. 3rd Cir.1985); *Williams v. Bank of Louisiana in New Orleans,* 454 So.2d 1138 (La.App. 4th Cir.1984); *Pioneer Bank & Trust v. Dean's Copy Products,* 441 So.2d 1234 (La. App. 2d Cir.1983); *Jackson v. State, Tchrs.' Retire. System,* 407 So.2d 416 (La. App. 1st Cir.1981).

■ Under the undisputed facts of the case, OWL paid to Adams a sum to which Adams was not entitled. Negligence in failing to pursue other remedies to cancel the lien does not excuse Adams' receipt of that which was not due. *Id.* For the foregoing reasons, the Court finds as a matter of law that Adams was unjustly enriched through OWL's payment of the incorrect amount of interest and the 25% attorneys' fees. Accordingly, the Court directed the verdict on the action for unjust enrichment in favor of the plaintiff. Because the plaintiff's action was not groundless, frivolous, without foundation or vexatious, the Court also directed the verdict in favor of the plaintiff, OWL, on the counterclaim for sanctions under F.R.C.P. Rule 11.

Based upon the foregoing, judgment shall be rendered in favor of plaintiff, OWL Construction Company, Inc., and against the defendants, Ronald Adams Contractor Inc. and Ronald J. Adams, in the sum of $3,835.36 [4] plus interest at the legal rate

---

**4.** The plaintiff, OWL Construction Company was charged a total of $716.66 in interest calculated at a rate of 18% annually or 1-½% per month. Had the interest been properly figured at the legal rate of 12% annually or 1% per month, OWL would have in fact owed only $644.47 in interest on the principal balance. This figure is arrived at as follows:

| Date Due: 15 days from invoice date | Principal owed | # of days at 12% annually | Amount of Interest |
|---|---|---|---|
| January 18, 1983 | $11,664.00 | 50 | $225.18 |
| February 1, 1983 | $ 6,672.00 | 36 | $ 80.20 |

Therefore, as of March 9, 1983, prior to the partial payment of $4,000, the principal balance totaled $18,336.00. Interest owed to March 9,

1983 totaled $305.38. The total amount owed as of March 9, 1983 was $18,641.38. On March 9, 1983, OWL made the partial payment of $4,000 bringing the remaining balance down to $14,-641.38. This balance was not paid until May 17, 1983. The interest owed for the intervening period is calculated as follows:

| Total owed as of March 9, 1983 | # of days at 12% annually | Amount of Interest | Total owed as of May 17, 1983 |
|---|---|---|---|
| $14,641.38 | 69 | $339.09 | $14,980.47 |

Because OWL paid $15,052.66 on May 17, 1983 instead of the actual amount owed of $14,-980.47, OWL is entitled to a refund of the differ-

from the date of judicial demand, plus costs.

## JUDGMENT

Pursuant to the motions for directed verdicts previously granted by the Court,

IT IS ORDERED, ADJUDGED AND DECREED that judgment be and is hereby rendered in favor of defendants, Ronald Adams Contractor, Inc. and Ronald J. Adams, and against plaintiff OWL Construction Company, dismissing with prejudice plaintiffs claims under the Racketeer Influenced and Corrupt Organizations Act (RICO); the claim for an abuse of process under Louisiana law and the claim for violations of the Louisiana Unfair Trade Practices and Consumer Protection Law;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be and is hereby rendered on the claim for unjust enrichment under Louisiana law in favor of plaintiff, OWL Construction Company, and against defendants Ronald Adams Contractor, Inc. and Ronald J. Adams, jointly and in solido, in the full sum of $3,835.36, plus interest at the legal rate from date of judicial demand until paid, plus costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be and is hereby rendered in favor of defendant in counterclaim, OWL Construction Company, and against plaintiffs in counterclaim, Ronald Adams Contractor, Inc. and Ronald J. Adams, dismissing with prejudice the counterclaim under F.R.C.P. Rule 11.

ence. The amount owed to OWL for over paid interest is therefore, $72.19.

OWL also improperly paid $3,763.17 in attorneys fees and is entitled to this amount as well.

The total amount of the judgment, therefore is $3,835.36.